Won's Cards, Inc., Appellant, v Samsondale/Haverstraw Equities, Ltd., et al., Appellants, and Samsondale Plaza Associates, L.P., et al., Respondents.

Third Department, February 14, 1991

## APPEARANCES OF COUNSEL

*Steven M. Silverstein (Jack Strauss* of counsel), for Won's Cards, Inc., appellant.

*Horwitz, Toback & Hyman (Arthur M. Toback* of counsel), for Samsondale/Haverstraw Equities, Ltd. and another, appellants.

*Haas, Greenstein, Samson, Cohen & Gerstein, P. C. (Robert I. Cantor* of counsel), for Samsondale Plaza Associates and others, respondents.

*MacVean, Lewis, Sherwin & McDermott (Michael H. Donnelly* of counsel), for Baxter's-Haverstraw, Inc., respondent.

## OPINION OF THE COURT

CASEY, J. P.

Plaintiff operates a card shop in a shopping mall pursuant

to a lease which provides that the "Landlord shall not permit any other premises within the Shopping Center * * * to be used for the sale of greeting cards and gift items, as normally found in a first rate gift shop, stationary [sic] and related supplies". In May or June 1987, defendant Baxter's-Haverstraw, Inc. (hereinafter Baxter) opened a retail drug store in the shopping mall pursuant to a lease which Baxter executed in July 1987. Baxter's lease provides that the leased premises "shall be used and occupied only as a super retail drug store including but not limited to health and beauty aids, hard goods, surgical supplies, food stuffs and any other items normally found in a super retail drug store". Among the many items which Baxter has sold since it opened the store are greeting cards, gift items and stationery. Plaintiff was aware of this competition from its inception.

In October 1987, defendants Samsondale/Haverstraw Equities, Ltd. and Charles Hach (hereinafter collectively referred to as Equities), the landlords under the aforementioned leases and the owners of the shopping mall, assigned the leases and sold the shopping mall to defendant Samsondale Plaza Associates, L. P. whose general partner is defendant Samstraw Realty Corporation (hereinafter collectively referred to as Associates). As a part of this transaction, each tenant in the shopping mall was asked to execute an estoppel certificate and a subordination agreement, which plaintiff executed in August and September 1987. The documents include representations that the landlord is not in default under any provision of the lease and that the tenant knows of no event which, but for the passage of time or the giving of notice, would constitute a default under the terms of the lease.

Plaintiff alleges that as early as January 1988 it complained to Associates about Baxter's competition in violation of the exclusive use provision in plaintiff's lease, and plaintiff's attorney wrote a letter in February 1989 formally demanding that Associates comply with the lease provision. The competition continued unabated and plaintiff commenced this action against, among others, Equities, Associates and Baxter in April 1989, seeking injunctive relief, specific performance and damages. Defendants' answers include a number of affirmative defenses and cross claims.

Plaintiff, Equities and Associates moved for summary judgment. Supreme Court granted Equities' motion as to the first and second causes of action seeking injunctive relief and specific performance, but as to plaintiff's third through fifth

causes of action for damages for breach of contract, Supreme Court denied Equities' motion and granted summary judgment to plaintiff on the issue of liability against Equities. Supreme Court granted Associates' motion for summary judgment and dismissed the complaint against them. Although Baxter did not move for summary judgment, Supreme Court, on its own motion, dismissed the complaint against Baxter. Supreme Court also dismissed all cross claims against Associates and Baxter. These appeals by Equities and plaintiff ensued.

■ Initially, we agree with Supreme Court's dismissal of plaintiff's causes of action to recover damages for breach of contract against Baxter because Baxter was not a party to plaintiff's lease agreement *(see, Perma Pave Contr. Corp. v Paerdegat Boat & Racquet Club,* 156 AD2d 550, 551). For the same reason, the cause of action seeking specific performance of the exclusive use provision of plaintiff's lease was also properly dismissed as to Baxter. Inasmuch as Equities is no longer the landlord under plaintiff's lease, the causes of action for specific performance and injunctive relief against Equities were properly dismissed. We also conclude that such relief is not available as to Associates. The provision of Baxter's lease concerning its use of the premises refers to "any other items normally found in a super retail drug store", and the record establishes that greeting cards, gift items and stationery fall within this broad language. Thus, Associates cannot be compelled or enjoined to prevent Baxter from selling these items in competition with plaintiff.

■ Turning next to the dismissal of plaintiff's cause of action seeking injunctive relief from Baxter, we conclude that Supreme Court erred. The question of whether Baxter's operation of its store can be affected by the injunctive relief sought by plaintiff depends upon whether Baxter had knowledge, actual or constructive, as to the existence of the exclusive use covenant in plaintiff's lease when Baxter executed its lease with Equities *(compare, Shoe Town v Independent Props. Co.,* 89 AD2d 674, *and Fox v Congel,* 75 AD2d 681, *with Waldorf-Astoria Segar Co. v Salomon,* 109 App Div 65, *affd* 184 NY 584). Plaintiff's complaint alleges that Baxter had knowledge of the exclusive use provision in plaintiff's lease, an allegation which Baxter denied. Inasmuch as Baxter did not move for summary judgment, the record is insufficient for the purposes of determining whether a question of fact exists regarding Baxter's actual or constructive knowledge. For example, the record contains nothing on the question of whether plaintiff's

lease was ever recorded. Accordingly, Supreme Court erred in granting, on its own motion, summary judgment to Baxter on plaintiff's cause of action for injunctive relief.

Turning to the liability of the two landlords for damages for breach of contract, our analysis begins by looking at the nature of the breach and the responsibilities of the landlords for that breach. It is undisputed that Baxter is selling items which, pursuant to plaintiff's lease, the landlord promised it would not permit to be sold by any store other than plaintiff's store. This breach of the exclusive use provision in plaintiff's lease is not a discrete isolated one, identified by a particular event such as the execution of Baxter's lease. Rather, the breach is a continuing one, which commenced when Baxter began to sell the items and continues as long as Baxter sells the items during the term of plaintiff's lease *(cf., Bartley v Walentas,* 78 AD2d 310, 314 [landlord's breach of warranty of habitability is a continuing breach]). As to the responsibilities of the two landlords for the breach, plaintiff's lease provides: "In the event of any assignment of Landlord's interest in this lease, the assignor shall no longer be liable for performance or observance of any agreements or conditions on the part of Landlord to be performed or observed." Equities' responsibility for the continuing breach, therefore, terminated upon Equities' assignment of plaintiff's lease to Associates. Because the assignment of plaintiff's lease expressly included an assumption by Associates of all of Equities' obligations under the lease, Associates' responsibility for the breach commenced upon the assignment and continues as long as the breach continues *(see, Bank of N. Y. v Hirschfeld,* 37 NY2d 501, 506). We note that although the assignment included an express assumption of obligations, it did not include Associates' assumption of any of Equities' liabilities which arose prior to the assumption *(see, Cirfico Holdings Corp. v GTE Prods. Corp.,* 99 AD2d 939 [assignment included an assumption of obligations *and* liabilities]).

Equities argues on appeal that plaintiff's claims against it are barred by the doctrines of waiver and ratification and by an exculpatory clause contained in plaintiff's lease. Our review of the record reveals that the question is not whether plaintiff ratified an unenforceable or voidable contract; rather, the critical issue upon which Equities' liability depends is whether plaintiff waived its claim for damages caused by Equities' continuing breach of the exclusive use provision prior to the assignment of plaintiff's lease. Waiver is "the

voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable" *(Nassau Trust Co. v Montrose Concrete Prods. Corp.,* 56 NY2d 175, 184). " 'It is essentially a matter of intention. * * * Commonly, it is sought to be proved by various species of proofs and evidence, by declarations, by acts and by non-feasance, permitting differing inferences and which do not directly, unmistakably or unequivocally establish it. Then it is for the jury to determine from the facts as proved or found by them whether or not the intention existed' " *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 403, quoting *Alsens Am. Portland Cement Works v Degnon Contr. Co.,* 222 NY 34, 37).

It is our view that the relevant evidence in this case, including the declaration made by plaintiff in the estoppel certificate and subordination agreement, is subject to differing inferences and does not directly, unmistakeably or unequivocally establish plaintiff's intentional relinquishment of the known right to seek damages for loss of profits caused by the continuing breach of the exclusive use provision prior to the assignment of the lease. Thus, a question of fact exists regarding the issue of waiver.

▮ The exculpatory clause relied upon by Equities provides that the landlord shall have no personal liability for any breach of the lease provisions and that the tenant shall look exclusively to the landlord's equity in the property for the satisfaction of the tenant's remedy. According to Equities, this provision bars plaintiff's action against Equities because it no longer has any equity in the property. We disagree. Equities had equity in the property during the period that plaintiff's damages were sustained. The proceeds of the sale of the property to Associates reflects Equities' equity in the property when plaintiff's damages were sustained and, therefore, it is our view that plaintiff may look to those proceeds for the satisfaction of its remedy. Equities' construction of the clause effectively seeks to shift Equities' liability for the damages caused while it was landlord to Associates, at least to the extent of Associates' equity in the property, despite the absence of any assumption of preexisting liabilities by Associates. In light of our conclusion that the clause does not bar plaintiff's action, we need not address plaintiff's claim that Equities cannot rely upon the clause because its breach of plaintiff's lease was in bad faith. Neither plaintiff nor Equities is entitled to summary judgment on the issue of Equities'

liability and, therefore, Supreme Court erred in granting plaintiff's motion.

■ As to the liability of Associates, we disagree with Supreme Court's conclusion that the defense of estoppel has been established as a matter of law. "An estoppel ' "rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury" ' * * *. It is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought" *(Nassau Trust Co. v Montrose Concrete Prods. Corp.,* 56 NY2d 175, 184, *supra).* Plaintiff clearly misrepresented the true facts in stating that the landlord was not in default of any lease provision when plaintiff was aware of the continuing competition by Baxter in violation of the exclusive use provision in plaintiff's lease. Plaintiff was also aware that the estoppel certificate and subordination agreement, which contained the misrepresentation, were a necessary part of Associates' acquisition of the shopping mall.

The record further establishes that Associates changed their position to their detriment by assuming plaintiff's lease, which included a provision that was being breached, a breach that Associates could not cure because Baxter's lease contained broad language concerning Baxter's use of the premises that did not preclude the sale of items in competition with plaintiff. Associates also contends that because of plaintiff's misrepresentation as to the existence of any default by the landlord, Associates closed on the property without making any provision with Equities, Baxter and/or plaintiff to resolve the problem. "An essential element of equitable estoppel is that the party seeking its application was ignorant of the facts" *(Marlow v Tully,* 100 AD2d 786, 787, *affd* 63 NY2d 918; *see also, Airco Alloys Div. v Niagara Mohawk Power Corp.,* 76 AD2d 68, 81). Although Associates alleges that they relied on plaintiff's misrepresentation and were unaware that plaintiff claimed there was any breach, noticeably absent from the affidavit of Associates' president is any allegation of a lack of knowledge of the existence of the breach itself; and as a proponent of summary judgment, Associates bore the burden of showing their entitlement to judgment as a matter of law *(see, Alvarez v Prospect Hosp.,* 68 NY2d 320, 324).

■ Nor did plaintiff carry its burden on its motion for summary judgment against Associates. As previously discussed, the breach occurred upon Baxter's sale of items in competition with plaintiff, not upon the execution of Baxter's lease. Associates could not have learned of the breach solely from their reading of the leases which they assumed. Rather, the question is whether Associates was aware that Baxter was selling items in competition with plaintiff when they allegedly relied on plaintiff's misrepresentation, a question which cannot be resolved on the parties' motion papers. Accordingly, Supreme Court erred in granting summary judgment to Associates.

In the event that Associates is unable to establish their ignorance of Baxter's sale of items in violation of plaintiff's exclusive use provision, estoppel may nevertheless be available as a defense to Associates if plaintiff is found to have waived, by its words and conduct, its right to claim damages for the breach. Inasmuch as the damages flow from a continuing breach, plaintiff's waiver would be an executory one as to damages occurring after the waiver, but because of the additional element of detrimental reliance established by Associates, the waiver would rise to an estoppel *(see, Nassau Trust Co. v Montrose Concrete Prods. Corp., supra,* at 184-186).

■■ There are two final matters to be addressed. Plaintiff contends that neither waiver nor estoppel is applicable because they would effectively result in a modification of the exclusive use provision, and the lease requires that a modification be done only by a writing signed by both the tenant and the landlord, which did not occur here. The contention is meritless because modification, waiver and estoppel are separate and distinct doctrines, having different elements *(supra,* at 183-184). As to the cross claims asserted by Equities and Associates, we have concluded that each of those defendants can be held responsible only for damages which occurred during the period that it was obligated as landlord to comply with the exclusive use provision in plaintiff's lease. In these circumstances, implied indemnification is inapplicable *(see, Board of Educ. v Sargent, Webster, Crenshaw & Folley,* 146 AD2d 190, 199-200, *lv denied* 75 NY2d 702), and there is no contractual right to be indemnified here. Contribution is also inapplicable *(see, Board of Educ. v Sargent, Webster, Crenshaw & Folley,* 71 NY2d 21).

In conclusion, Supreme Court's order must be modified by reversing so much thereof as (1) granted summary judgment

to Baxter dismissing plaintiff's cause of action for injunctive relief, (2) granted plaintiff's motion for summary judgment on the issue of Equities' liability on plaintiff's causes of action for damages, and (3) granted Associates' motion for summary judgment dismissing plaintiff's causes of action for damages.

MIKOLL, YESAWICH, JR., LEVINE and MERCURE, JJ., concur.

Order modified, on the law, without costs, by (1) deleting in the second decretal paragraph the word "granted" and substituting therefor the word "denied", (2) deleting in the third decretal paragraph the phrase "granted dismissing the complaint against said defendants" and substituting therefor the phrase "denied as to plaintiff's Third, Fourth and Fifth causes of action and is granted to the extent of dismissing plaintiff's First and Second causes of action", (3) deleting in the fourth decretal paragraph the phrase "in its entirety" and substituting therefor the phrase "except insofar as it seeks injunctive relief", and (4) deleting the fifth decretal paragraph, and, as so modified affirmed.