In re Michael KAPLAN and
Morris Kaplan, Debtors.

Bankruptcy Nos. 91–30719, 91–30720.

United States Bankruptcy Court,
D. New Jersey.

Sept. 5, 1995.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Robert A. Baime, Bruce Buechler, Roseland, NJ, for debtors.

Greenberg Dauber & Epstein, Paul J. Dillon, Newark, NJ, for creditor Commercial Bank of New York.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### *PROCEDURAL BACKGROUND*

This matter comes before the court as a motion by debtors Michael Kaplan and Morris Kaplan ("debtors") to estimate the claims of creditors Commercial Bank of New York ("CBNY") and Midlantic National Bank ("Midlantic") at zero pursuant to 11 U.S.C. § 502(c). This court heard the motion on February 27, 1994. In May 1994, Midlantic's

debt was satisfied when CBNY purchased the loan, and debtors were released from their Midlantic guaranties. Thus the motion was rendered moot as to Midlantic. A motion to supplement the record was heard on October 24, 1994 only with respect to CBNY's claim; and a further telephonic hearing was heard on January 17, 1995. This court has jurisdiction over the matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(A), (B) and (O).

### FACTS

This case involves the estimation of the claim of CBNY based upon personal guaranties executed by each of the debtors ("Guaranties"). The Guaranties were signed by debtors on April 24, 1989 to induce CBNY to loan $1,200,000 to the Summerton Group, a New Jersey partnership. The Guaranties were absolute and guaranteed that a $1,200,000 note made by Summerton Group ("Summerton") in favor of CBNY dated April 26, 1989 (the "Note") would be paid. The Guaranties provided that CBNY could seek payment from debtors without first having attempted collection from the principal, Summerton. The Guaranties also stated that they were to be construed in accordance with New York law.

Pursuant to the Note, Summerton was required to make monthly interest payments with a final balloon payment due on April 30, 1992. Prior to February 11, 1991, the date that debtors filed their petition, Summerton was in default on its loan for failure to pay interest. Rather than commence a collection action on the Note, CBNY restructured its loan with Summerton on March 1, 1991 ("March 1991 Restructuring Agreement") and added the past-due interest to the principal amount of the loan. The March 1991 Restructuring Agreement also extended the due date of the final balloon payment to February 28, 1993 and lowered the interest rate.

As part of the March 1991 Restructuring Agreement, the debtors were required to execute reaffirmations of the guaranties, which reaffirmed and ratified the terms and conditions of the original Guaranties. ("Reaffirmations"). The Reaffirmations also contained an additional covenant that the liabilities under the original Guaranties shall include the obligations of Summerton under the Note as well as the March 1991 Restructuring Agreement. Since the consummation of the March 1991 Restructuring Agreement and the execution of the Reaffirmations, Summerton has not been in default on the loan and is presently current with all interest payments. Since execution of the original Note and Guaranties, no demand letter ever has been issued by CBNY and no default interest has been charged.

After the March 1991 Restructuring Agreement, the Note was modified again four more times by extending the repayment date and/or reducing the interest rate. Finally in May 1994, CBNY and Summerton entered into a major restructuring agreement. CBNY purchased a $4,900,000 loan from Midlantic. Midlantic accepted $2,100,000 for the loan in full satisfaction of its obligation from Summerton and the individual partners. CBNY also infused an additional $1,700,000 into Summerton and now holds first and second mortgages against Summerton's property. In restated loan documents executed by Summerton Group in connection with this restructuring, Summerton represented that it had sufficient financial ability to pay its debts as they mature and that its assets exceed its liabilities. It is uncontroverted that existing cash flow from Summerton's mortgaged property adequately covers the combined debt service, including significant principal amortization.

### DISCUSSION

#### 1. ESTIMATION

■ Debtors argue that CBNY's claim should be estimated at zero pursuant to 11 U.S.C. § 502(c) because the principal, Summerton, is not in default, and is not in any imminent danger of defaulting on CBNY's loan since there is sufficient cash flow to service all debt. CBNY counters that debtors are liable on their Guaranties for the full amount of the $1,200,000 loan notwithstanding that the loan is current. CBNY asserts that in February 1991, after the filing of the petition, the loan was in default and that debtors' liability under the Guaranties be-

came fixed at that point in time. For the following reasons this court finds that the debtors are not liable under the Guaranties and that the claim of CBNY should be estimated at zero pursuant to 11 U.S.C. § 502(c)(1).

11 U.S.C. § 502(c)(1) provides in relevant part:

There shall be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case ...

Neither the bankruptcy code nor the federal rules of bankruptcy procedure provide procedures or guidelines for estimation. However, the Third Circuit has ruled that bankruptcy judges may use "whatever method is best suited to the particular contingencies at issue," *Bittner v. Borne Chemical Co.*, 691 F.2d 134, 135 (3d Cir.1982); provided that the procedure is consistent with the policy underlying Chapter 11, that a "reorganization must be accomplished quickly and efficiently." *Id.* at 137. The court is of course bound by "the legal rules which may govern the ultimate value of the claim" *Id.* at 136; and the court must determine the value of the claim according to its best estimate of the claimant's chances of ultimately succeeding in a state court action. *Id.* It is not inappropriate to value a party's claim at zero where the claim is contingent[1] and where the bankruptcy court finds that the party probably would not succeed on the merits in a state court action. *Id.* As recognized by the Third Circuit in *Bittner,* the estimation process protects the interests of other creditors in not having their distributions diminished by allowing a claim whose contingency may never occur.[2]

## 2. CHOICE OF LAW

The bankruptcy court first must determine whether the cause of action involves issues of state law. In most instances the bankruptcy court looks to state law in determining the validity or value of claims. *In re Iommazzo,* 149 B.R. 767, 771 (Bankr. D.N.J.1993) (citing *In re Meyertech Corp.,* 831 F.2d 410, 417–418 (3d Cir.1987)). This case involves the interpretation and effect of a guaranty, which is controlled by state law.

In an action where state law governs, federal courts generally look to the law of the forum state to resolve choice of law issues. *Fassett v. Delta Kappa Epsilon (New York),* 807 F.2d 1150, 1157 (3d Cir. 1986), *cert. denied,* 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987). However, in this case, the Guaranties contained forum selection clauses which provided that the Guaranties were to be governed by and construed in accordance with the laws of the State of New York. As noted by the Third Circuit, "the law of the state or other jurisdictions whose law governs the construction of the contract generally applies to the enforceability [of the forum selection clause] determination unless 'a significant conflict between some federal policy or interest and the use of state law [exists].'" *In re Diaz Contracting, Inc. (Diaz Contracting, Inc. v. Nanco Contracting Corp.),* 817 F.2d 1047, 1050 (3d Cir.1987) (quoting *General Eng'g Corp. v. Martin Marietta Alumina, Inc.,* 783 F.2d 352, 356 (3d Cir.1986)).

*In re Diaz* is similar to this case in that it involved the bankruptcy court's interpretation of a contract containing a forum selection clause. 817 F.2d at 1050. The panel found that the bankruptcy court erred by failing to apply New York law. The

---

1. A "guaranty is a classic example of a contingent obligation." *Matter of Fox,* 64 B.R. 148, 152 (Bankr.N.D.Ohio 1986) (citing *In re Barnett,* 42 B.R. 254 (Bankr.S.D.N.Y.1984)).

2. CBNY also argues that its claim is not contingent because there has been a default in interest payments. While it is true that an absolute guaranty becomes non-contingent and fixed upon default by the principal obligor, *See In re F.B.F. Indus., Inc.,* 165 B.R. 544, 549 (Bankr.E.D.Pa.

1994) (and citations contained therein) (interpreting the law of various jurisdictions concerning the non-contingent nature of an absolute guaranty after default); *see also Aquavella v. Harvey,* 69 Misc.2d at 608, 330 N.Y.S.2d at 563 (interpreting New York law), an initial determination must be made that the loan is in fact in default. Because this court finds below that the default was waived by CBNY, the claim is contingent.

forum selection clause selected New York law to govern the agreement. *Id.* The Third Circuit held that under New York law, forum selection clauses are governed by the standard set forth in the United States Supreme Court case, *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (forum selection clauses are *prima facie* valid and "generally enforced absent strong showing that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.") *In re Diaz,* 817 F.2d at 1050.[3] *The Bremen* standard is applicable in a bankruptcy proceeding. *Id.*

In applying *The Bremen* standard, this court finds that there has been no showing that enforcement of the forum selection clause would be unreasonable or unjust. In addition, there is no implication whatsoever that the clause is invalid for fraud or overreaching. Thus this court is required to give effect to the forum selection clause and interpret the Guaranties in accordance with New York law.

### 3. LIABILITY UNDER THE GUARANTIES

 Under New York law, an absolute and unconditional guaranty or a "guaranty of payment" obligates the guarantor to pay upon default of the principal debtor. No steps need be taken to collect from the principal before demand is made of the guarantor. *Citibank, N.A. v. Plapinger,* 66 N.Y.2d 90, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985). An absolute and unconditional guaranty is established by language providing for payment by the guarantors immediately upon default. *Tucker Leasing Capital Corp. v. Marin Medical Management, Inc.,* 833 F.Supp. 948, 957 (E.D.N.Y.1993).[4] Absolute and unconditional guaranties are consistently upheld by New York courts. *First New*

*York Bank for Business v. DeMarco,* 130 B.R. 650, 654 (S.D.N.Y.1991) (citations omitted).

CBNY's Guaranties in this case are clearly absolute and unconditional. The Guaranty states that the debtor "absolutely and unconditionally guarantees to Bank the prompt payment of claims of . . . Bank against Borrower." (Guaranty, Paragraph 1). The Guaranty further states that "if default occurs in the punctual payment of any sum . . . then . . . said Liabilities, although not yet due, shall, without notice or demand, forthwith become immediately due and payable . . ." (Guaranty, Paragraph 8).

 In order to collect on an absolute and unconditional guaranty, the obligee must meet three criteria: (1) proof of the note, (2) proof of the guarantees, and (3) the failure to make payment in accordance with their terms (default). *Tucker Leasing Capital Corp. v. Marin Medical Management, Inc.,* 833 F.Supp. 948, 957 (E.D.N.Y.1993) (citing *Key Bank of Long Island v. Burns,* 162 A.D.2d 501, 502, 556 N.Y.S.2d 829, 830 (App. Div.2d Dept.1990)). *See also 117–14 Union Turnpike Assoc., L.P. v. County Dollar Corp.,* 187 A.D.2d 357, 589 N.Y.S.2d 880 (App.Div. 1st Dept.1992). In this case, CBNY has met its proofs regarding the first two criteria. It has submitted uncontroverted proof of both the Note and the Guaranties.

 The third criteria, "default," is crucial. Before the guarantor is obligated to pay, the principal debtor must be in default. Default "is the very foundation of the guaranty and the contingency against which the guaranty is made." *Aquavella v. Harvey,* 69 Misc.2d 606, 608, 330 N.Y.S.2d 560, 563 (Sup. Ct. Monroe Co.1972).

---

**3.** Both New York law *Envirolite Enter. v. Glastechnische Indus. Peter Lisec Gesellschaft M.B.H.,* 53 B.R. 1007 (S.D.N.Y.1985), aff'd, 788 F.2d 5 (2d Cir.1986); *British West Indies Guaranty Trust Co., Ltd. v. Banque Internationale A Luxembourg,* 172 A.D.2d 234, 567 N.Y.S.2d 731, 732 (App.Div. 1st Dept.1991); and New Jersey law *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 202 (3d Cir.), cert. denied, 464 U.S.

938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983); *Fairfield Lease v. Liberty Temple,* 221 N.J.Super. 647, 652, 535 A.2d 563 (Law Div.1987), adopt *The Bremen* standard in determining the validity of forum selection clauses.

**4.** *Accord The Summit Trust Company v. Willow Business Park, L.P.,* 269 N.J.Super. 439, 635 A.2d 992 (App.Div.1994).

## 4. WAIVER

■ There is a serious dispute as to whether the CBNY $1,200,000 loan is in default. An issue is raised as to whether the default that occurred in 1991 has been waived by the bank. CBNY argues that the moment the default occurred, that debtors' liability under the Guaranties was fixed and cannot become "unfixed" even though the loan has been restructured and is current. Debtors argue that the loan is current, that the loan was restructured pursuant to a formalized restructuring agreement, that reaffirmations of guaranties were executed, and that the loan has been current since the initial restructuring. Although debtors did not articulate the doctrine of waiver, the issue is implicit in their argument.

A recent case in the Eastern District of Pennsylvania is on point and instructive. *In re F.B.F. Industries, Inc.,* 165 B.R. 544 (Bankr.E.D.Pa.1994). In that case, the bankruptcy court was asked to estimate the claim of Meridian Bank based upon a guaranty executed by the debtor as collateral for a loan to the principal obligor. The debtor claimed that the guaranty should be estimated at zero because there was no default, since any default had been waived by the bank. *Id.* at 550. In that case, the bank had issued a default letter but also had written a letter agreeing to reduce the monthly payments. The debtor argued that the letter reducing payments was tantamount to a waiver. *Id.*

The court found that if there had been a waiver, then there would have been no default. Consequently the debtor would not have been liable under the note because "default is the sole extrinsic event which triggers liability of the debtor to the creditor." *Id.* at 549 (citations omitted). However, the court found that the facts did not amount to a waiver of default under Pennsylvania law

because the principal obligor was not current even on reduced monthly payments, and did not demonstrate an ability to pay the debt in the future. *Id.* at 551. This court next must determine whether a waiver of default exists under New York law.

■ Pursuant to the laws of New York, a mortgagor is bound by the terms of the mortgage and generally cannot be relieved of default unless there is *waiver* by the mortgagee, estoppel, bad faith, fraud, or oppressive or unconscionable conduct on the latter's part. *Nassau Trust Co. v. Montrose Concrete Products Corp.,* 56 N.Y.2d 175, 183, 451 N.Y.S.2d 663, 667, 436 N.E.2d 1265, 1269 (1982) (citing *Ferlazzo v. Riley,* 278 N.Y. 289, 292, 16 N.E.2d 286 (1944) (emphasis added)).[5]

■ A waiver requires "no more than the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable." *Id.* 56 N.Y.2d at 184, 451 N.Y.S.2d at 668, 436 N.E.2d at 1270.[6] Once a waiver is executed, it cannot be expunged or recalled. If the waiver is executory, it may be withdrawn upon notice to the party whose performance has been waived and upon offering a reasonable time after the notice within which to perform. *Id.*

■ A waiver may be established by express agreement, or by "such conduct or failure to act as to evince an intent not to claim the purported advantage." *Hadden v. Consolidated Edison Company of New York, Inc.,* 45 N.Y.2d 466, 469, 410 N.Y.S.2d 274, 276, 382 N.E.2d 1136, 1138 (1978). On the issue of proof of a waiver, the Appellate Division Court for the Third Department has noted:

"It is essentially a matter of intention ... Commonly, it is sought to be proved by various species of proofs and evidence, by declarations, by acts and by non-feasance, permitting differing inferences and which

---

5. In *Nassau Trust Co. v. Montrose,* the New York Court of Appeals found that a waiver may be established where the mortgagee orally agreed to forego acceleration of principal and foreclosure for one year to give the delinquent mortgagor a reasonable opportunity to negotiate an unforced sale of the mortgaged premises. The court found that a trial was required on unrefuted submissions. *Id.*

6. New Jersey has a similar standard for waiver. Under New Jersey law, a waiver involves the "intentional relinquishment of a known right." *West Jersey Title & Guar. Co. v. Indus. Trust,* 27 N.J. 144, 152, 141 A.2d 782, 786 (1958).

do not directly unmistakably or unequivocally establish it. Then it is for the jury to determine from the facts as proved or found by them whether or not the intention existed."

*Won's Cards, Inc. v. Samsondale/Haverstraw Equities, Ltd.,* 165 A.D.2d 157, 164, 566 N.Y.S.2d 412, 416 (App.Div. 3d Dept.1991).

In this case the principal obligor, Summerton, was delinquent in monthly interest payments in February, 1991, prior to the commencement of this bankruptcy proceeding. The default in interest payments is the only default that has been alleged. This court finds that the facts clearly evidence a classic waiver of default.

After default, Summerton and CBNY negotiated and CBNY agreed to restructure the loan. The restructuring was consummated on March 1, 1991 and CBNY agreed to add the past-due interest to the principal amount of the loan. CBNY also extended the due date of the final balloon payment and lowered the interest rate. A formal restructuring agreement was executed by all of the parties reflecting this arrangement. In addition, CBNY had the parties sign reaffirmations of the Guaranties. Thus debtor has come forward with a formal written agreement and other documents executed in connection with the restructuring evidencing the waiver and that the parties were going forward with a new relationship. The facts of this case are much stronger than the prominent New York Court of Appeals case on waiver. *See Nassau Trust Co. v. Montrose Concrete Products Corp.,* 56 N.Y.2d 175, 451 N.Y.S.2d 663, 436 N.E.2d 1265 (1982). In that case, there were no written documents whatsoever, but rather an oral agreement which the court held could establish a waiver. *Id.*

This court also notes that CBNY never charged default interest and never issued a demand letter. Although CBNY was not required to make demand, it was entitled to call in the loan and also to charge default interest. The fact that CBNY instead chose not to call the loan, but rather to restructure it, is significant evidence that the default was intended to be waived. Additionally, the adding of the interest arrears to the principal amount of the loan indicates that CBNY not only was waiving but also was curing the default.

Since the execution of the March 1991 Restructuring Agreement, the principal obligor has been current in all monthly interest payments. It also was asserted by debtors, and not disputed by the bank, that the principal has the present and future ability to service the debt, and that the cash flow from the mortgaged premises provides enough capital also to cover significant principal amortization. Thus there is no imminent danger of the principal defaulting on the loan. This is further highlighted by CBNY's confidence in the principal evidenced by the May 1994 infusion of an additional $1.7 million in capital.[7]

In light of the above facts, this court finds that there was a waiver of default. Thus, the principal obligor (Summerton) is not in default on the CBNY loan and CBNY has not met the "default" requirement in proving an action on a guaranty. Accordingly, the debtors are not liable under the Guaranties.

■■■■ This result is in accordance with a basic concept of suretyship law that the liability of a guarantor cannot be greater than that of the principal. *United States v. Seaboard Sur. Co.,* 817 F.2d 956, 962 (2d Cir.1987), *cert. denied,* 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 115 (1987); *see also Knecht, Inc. v. United Pacific Insur. Co.,* 860 F.2d 74, 84 (3d Cir.1988) (J. Cowen dissent) (listing numerous citations on this point). Since waiver is a valid affirmative defense to a foreclosure action, *Nassau Trust Co. v. Montrose,* 56 N.Y.2d at 185, 451 N.Y.S.2d at 669, 436 N.E.2d at 1271, no action could be maintained against Summerton now, while the loan is current. Accordingly, the liability of debtors is no greater.

■■■■ CBNY argues that once the default occurred, the liabilities under the Guaranties are fixed and cannot become unfixed.

---

7. Moreover, the court notes that the bank is oversecured by the mortgaged premises, thus there is not an issue of unfairness or hardship by this result, in the unlikely event that the principal does default in the future.

However, the effect of a waiver is to nullify the rights that the obligee would have had if the default had occurred. For instance, upon default a mortgagee may accelerate the principal of a loan and commence a foreclosure proceeding. When there is a waiver of default, there is also a waiver of those rights attendant to the default (i.e. the right to accelerate and foreclose) *Nassau Trust Co. v. Montrose* 56 N.Y.2d at 184, 451 N.Y.S.2d at 668, 436 N.E.2d at 1270. The same is, and must be true with respect to the mortgagee's/obligee's rights to collect on a guaranty upon waiver of default. Any other result renders the waiver meaningless.

Because this court finds that the debtors are not liable under the Guaranties, it need not address the other arguments of debtors (that the underlying agreement was modified, and that the 1994 restructuring agreement eliminated debtors' right of subrogation).

### CONCLUSION

For all of the above reasons, this court finds that CBNY did not meet its proofs of a guaranty case and the debtors are thus not liable under the Guaranties. The court finds that there is no default, because the nonpayment of interest in 1991 was waived by CBNY. Since debtors are not liable under the Guaranties and CBNY most likely would not succeed on a state court action, the court estimates CBNY's claim at zero pursuant to 11 U.S.C. § 502(c)(1).

Counsel for debtors shall submit an appropriate form of order within ten (10) days.