[Cite as *Agrawal v. Univ. of Cincinnati*, 2017-Ohio-8644.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Dharma P. Agrawal, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 16AP-293 |
| v. | : | (Ct. of Cl. No. 2015-00970) |
| University of Cincinnati, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on November 21, 2017

**On brief:** *Clodfelter & Gutzwiller*, and *Robert Gutzwiller*; *McFadden & Winner*, and *Mary Jane McFadden*, for appellant. **Argued:** *Mary Jane McFadden.*

**On brief:** *Michael DeWine*, Attorney General, *Randal W. Knutti*, and *Emily Simons Taposci*, for appellee. **Argued:** *Randal W. Knutti.*

APPEAL from the Court of Claims of Ohio

BRUNNER, J.

{¶ 1} Plaintiff-appellant, Dharma P. Agrawal, appeals a March 16, 2016 decision of the Court of Claims of Ohio dismissing his complaint for breach of contract against the University of Cincinnati ("the University"). Because we agree that the face of his complaint discloses that his claims were not brought within the statute of limitations, we affirm the dismissal. Based on there being no evidence in the record of a collective bargaining agreement, the Court of Claims could not find that Agrawal's claims were subject to or affected by a collective bargaining agreement and thereby dismissing pursuant to Civ.R. 12(B)(1). We thus affirm the Court of Claims' decision on grounds other than stated in its decision. We hold on de novo review that the court of claims had jurisdiction and could not

dismiss pursuant to Civ.R. 12(B)(1), but because Agrawal filed his lawsuit in the Court of Claims after the statute of limitations had run, he failed to state a claim.

## I.  FACTS AND PROCEDURAL POSTURE

{¶ 2}   On November 16, 2015, following years of litigation in both federal and state courts in search of the proper jurisdiction in which to bring his action, Agrawal filed suit against the University and the State of Ohio in the Court of Claims of Ohio.  (Nov. 16, 2015 Compl.)  The complaint set forth the parties and jurisdiction and alleged facts which read in their entirety as follows:

> 4. Professor Agrawal was appointed and hired, pursuant to a contract with the University of Cincinnati executed in 1998, as an educator and researcher.  This contract remains in force to this date.  Such contract is appended to this complaint as Exhibit 1 and Exhibit 2.
>
> 5. The University did not perform material parts of Agrawal's 1998 contract, and among other breaches, in 2006, Dean Montemagno, then Dean of the College of Engineering, and other University officials diverted approximately $360,000 of Ohio Board of Regents ("OBR") Ph.D. Enhancement Initiative Funds, deriving from attached Exhibits 1 and 2, from Agrawal's control to Montemagno's control and, upon knowledge and belief, redistributed the money within the College.  This caused Professor Agrawal not to be able to fund various research projects, students, and post-doctorate fellows as anticipated, causing irreparable harm to Agrawal's research, reputation, and professional standing.
>
> 6. All breaches of Agrawal's employment contract were performed by University officials, in their official capacities, and while acting on behalf of the University.
>
> 7. In further breach of Professor Agrawal's employment contract, the University promised to "encourage" him to "establish an interdepartmental center for distributed computing," such encouragement to take various forms, including but not limited to providing a location for the center, two or more support faculty, $1oo,ooo or more of direct University funding, and additional matching funds to supplement the OBR funds.  Said "encouragement" was never provided, causing difficulty and delay in the creation and operation of the interdepartmental center which resulted in significant damage to Agrawal's research, reputation, and professional standing.

8. In further breach of Professor Agrawal's employment contract, the University failed to provide stipends for various graduate students under Agrawal's tutelage, requiring Dr. Agrawal to look to outside sources of funding to support said students, and causing irreparable harm to Agrawal's research, reputation, and professional standing.

9. In further breach of Professor Agrawal's employment contract, Dean Montemagno notified Agrawal by letter dated October 3, 2008, that he was "not suited to hold the title of OBR Distinguished Professor" and that "[e]ffective immediately, your title will be Professor of Computer Science, and you will be held to the workload requirements of all similarly situated professors in your department." Said action caused damage and irreparable harm to Agrawal's research, reputation, and professional standing.

(Compl. at ¶ 4-9.) As quoted, Agrawal attached to the complaint signed correspondence functioning as the offer and acceptance of his position at the University in June 1998. (Exs. 1-2, Compl.)

{¶ 3} The main offer letter of June 12, 1998 indicates that the offer was for the position of "OBR Distinguished Professor of Computer Science and Computer Engineering," "with tenure," and it included, "spending discretion over the OBR Computer Science Ph.D. enhancement funds and discretion with consultation with other faculty over UC approved matching funds." (Ex. 2 at 1, Compl.) It also provided that "[t]he Department, working with the College and the University, will also provide a discretionary fund of $100,000 for your research needs." *Id.* According to the letter, Agrawal would be "encouraged to establish an interdepartmental center for distributed computing" and provided a reduced teaching load of one course per quarter for three of four academic quarters. *Id.* at 1-2. A cover letter dated June 1, 1998 also details the major terms of the offer. (Ex. 1, Compl.) The documents reflect that Agrawal signed, indicating his acceptance of the offer, on June 15, 1998, and the appointment date was to be July 1, 1998. (Ex. 1, Compl.; Ex. 2 at 3, Compl.)

{¶ 4} Agrawal alleged in his complaint a single count for breach of contract. (Compl. at ¶ 10-14.) In particular, Agrawal alleged:

The University breached the provisions of this contract by diverting funding from plaintiff's control; by unilaterally reducing his office and laboratory space; by failing to provide the "encouragement," monetary and otherwise, necessary to

> support an "interdepartmental center for distributed computing;" by taking or attempting to take from plaintiff his title of Distinguished Professor; and by changing his faculty status. These and other breaches of the contract by the University have resulted in damage to plaintiff.

*Id.* at ¶ 13.

{¶ 5} On December 15, 2015, the University[1] filed a motion to dismiss on the grounds that the Court of Claims lacked jurisdiction over the lawsuit and that the lawsuit was not filed within the applicable statute of limitations. (Dec. 15, 2015 Mot. to Dismiss.) On January 20, 2016, Agrawal responded arguing that this case had previously been litigated in federal and state common pleas courts with the result that jurisdiction had been determined to be in the Court of Claims, and that the claims would only accrue when the contract between the University and Agrawal terminates. (Jan. 20, 2016 Memo. Contra). S*ee also Agrawal v. Univ. of Cincinnati*, 1st Dist. No. C-14022, in passim (Dec. 19, 2014). On March 16, 2016, the Court of Claims dismissed the action for untimeliness and for want of subject-matter jurisdiction. (Mar. 16, 2016 Entry of Dismissal.) The Court of Claims granted the University's motion to dismiss pursuant to Civ.R. 12(B)(6) on the basis that Agrawal's complaint had been filed beyond the statute of limitations. The Court of Claims went on to discuss matters not appearing any place in the record, positing that, because Agrawal was subject to collective bargaining, it lacked jurisdiction. It therefore granted the motion to dismiss pursuant to Civ.R. 12(B)(1).

{¶ 6} Agrawal now appeals.

## II. ASSIGNMENT OF ERROR

{¶ 7} Agrawal assigns a single error for review:

> The Court of Claims erred by dismissing Appellant's complaint which clearly stated a timely cause of action over which that Court has jurisdiction.

---

[1] On November 17, 2015, the day after the complaint was filed, the Court of Claims sua sponte struck the State of Ohio from the caption as surplusage; presumably because the University is an instrumentality of the State and as such, is amenable to suit. *See* Mech*anical Contrs. Assn. of Cincinnati, Inc. v. Univ. of Cincinnati*, 152 Ohio App.3d 466, 2003-Ohio-1837, ¶ 41 (10th Dist.) ("The university, as a state institution, is an instrumentality of the state of Ohio within the meaning of the statute. *See* R.C. 2335.39(A)(6), 2743.01(A), and *McIntosh v. Univ. of Cincinnati* (1985), 24 Ohio App.3d 116, 118, 24 Ohio B. 187, 493 N.E.2d 321.").

## III.  DISCUSSION
### A.  Standard of Review

{¶ 8}    A court of appeals' review of a dismissal by the Court of Claims pursuant to Civ.R. 12(B)(1) (lack of subject-matter jurisdiction) and Civ.R. 12(B)(6) (failure to state a claim) is de novo.  *Windsor House, Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 09AP-584, 2010-Ohio-257.

{¶ 9}    On a motion to dismiss pursuant to Civ.R. 12(B)(6) for failure to state a claim on which relief can be granted, affidavits and other evidence submitted in connection with R.C. 2743.02(F) cannot be considered in connection with a Civ.R. 12(B)(6) motion if such motion is not converted to a summary judgment motion.  *Elliott v. Ohio Dept. of Ins.,* 88 Ohio App.3d 1, 4-5 (10th Dist.1993), fn. 2.

{¶ 10}   However, since there also existed a Civ.R. 12(B)(1) motion alleging the Court of Claims lacked subject-matter jurisdiction, the Court of Claims was not confined to the allegations of the complaint when determining its subject-matter jurisdiction.  It was able to consider "pertinent evidentiary materials" without converting the motion to one for summary judgment.  *Windsor House, Inc.* at ¶ 9, citing *Nemazee v. Mt. Sinai Med. Ctr.*, 56 Ohio St.3d 109, 111, fn. 3, (1990); *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.*, 48 Ohio St.2d 211 (1976), paragraph one of the syllabus.  *See also Guillory v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 07AP-861, 2008-Ohio-2299, ¶ 6, citing *Southgate Dev. Corp.*

### B.  Statute of Limitations

{¶ 11} Dismissal of a cause of action is proper on statute of limitations grounds if the complaint "conclusively show[s] on its face the action is barred by the statute of limitations."  *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St.2d 376 (1982), paragraph three of the syllabus; *Mills v. Whitehouse Trucking Co.*, 40 Ohio St.2d 55, 60 (1974); *see also* Civ.R. 12(B).  Attachments to the complaint are considered part of the complaint for all purposes. Civ.R. 10(C).  Thus, in evaluating whether Agrawal's cause of action should have been dismissed on statute of limitations grounds, we confine our analysis (as the trial court also should have done) to the complaint and employment correspondence attached thereto.

{¶ 12} The statute of limitations for civil actions based on written contracts is currently 8 years. R.C. 2305.06.  For claims that accrued prior to September 28, 2012, the

statute of limitations is the lesser of 15 years from the date of accrual or 8 years from September 28, 2012, the effective date of the amendment. 2012 Am.Sub.S.B. No. 224, Section 4.[2] But, since this case concerns an action in the Court of Claims, the statute of limitations is 2 years and neither the current nor former R.C. 2305.06 applies. R.C. 2743.16(A). This Court has previously explained:

> Pursuant to R.C. 2743.16(A), "civil actions against the state permitted by sections 2743.01 to 2743.20 of the Revised Code shall be commenced no later than two years after the date of accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties." The General Assembly "clearly intended for [the] two-year limitation period [set forth in R.C. 2743.16(A)] to take precedence over all other statutes of limitation in the Revised Code at large." *Simmons v. Ohio Rehab. Servs. Comm.*, 10th Dist. No. 09AP-1034, 2010 Ohio 1590, ¶ 6; see also *Grenga v. Youngstown State Univ.*, 10th Dist. No. 11AP-165, 2011 Ohio 5621, ¶ 17; *Windsor House, Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 09AP-584, 2010 Ohio 257, ¶ 20. Therefore, the longest limitations period applicable to actions in the Court of Claims is two years. *Grenga* at ¶ 18.

*Cargile v. Ohio Dept. of Admin. Servs.*, 10th Dist. No. 11AP-743, 2012-Ohio-2470, ¶ 12.

{¶ 13} Agrawal asserts in his complaint that the contract between the parties began in 1998 and is still in force. (Compl. at ¶ 4.) The complaint includes copies of the contract documents, dated June 1 and 12, 1998 respectively. (Exs. 1-2, Compl.) Agrawal alleges in his complaint breaches in 2006 and October 2008 of the promises contained in these documents. (Compl. at ¶ 5, 9.) Agrawal also alleges that some promises were "never" fulfilled, meaning that breach was essentially immediate (i.e. in 1998). *Id.* at ¶ 7. All of these dates are significantly more than two years before November 16, 2015, the filing date of the complaint.

{¶ 14} Agrawal asserts in his brief that the University's obligations to him were ongoing and that the statute of limitations begins to run on the date when the written contract ends (which it has not yet done). (Agrawal Brief at 23-25.) But none of the cases Agrawal cites supports this view that a contract action accrues when the contract terminates (and therefore that the statute of limitations never runs while the contract is still in force). *Sys. Automation Corp. v. Ohio Dept. of Admin. Servs.*, 10th Dist. No. 04AP-97, 2004-Ohio-

---

[2] Reported at 2011 Ohio SB 224.

5544 (holding that a contract did not terminate in 1999 as set forth therein because of the actions of the parties and thus the contract was breached and an action could be commenced when one party finally refused pay in 2001); *Humphrey v. State, Dept. of Mental Health & Mental Retardation*, 14 Ohio App.3d 15, 17 (10th Dist.1984) ("the plaintiff's cause of action for breach of the fiscal year 1979 contracts was properly barred by the two-year statute of limitations").

{¶ 15} But, contrary to the position argued by Agrawal, contract claims typically accrue when the complaining party suffers damages as a result of an alleged breach. *Columbus Green Bldg. Forum v. State*, 10th Dist. No. 12AP-66, 2012-Ohio-4244, ¶ 27; *but cf. Thompson v. Ohio Dept. of Transp.*, 10th Dist. No. 96API04-497, 1996 WL 684138, 1996 Ohio App. LEXIS 5307, *11-12 (Nov. 26, 1996) (concerning applicability of the "discovery rule" to contract cases where the statute is tolled until the cause of action is or should have been discovered).  As alleged on the face of Agrawal's complaint, breaches occurred immediately after the contract commenced in 1998, 2006, and 2008.  (Compl. at ¶ 5, 7, 9).  If the statute began to run at any of those times, Agrawal's claims are time-barred.

{¶ 16}  This Court has recognized that the statute of limitations may extend past the initial breach in cases where a breach is a continuing or ongoing breach.  *Singleton v. Adjutant Gen. of Ohio*, 10th Dist. No. 02AP-971, 2003-Ohio-1838, ¶ 22 (recognizing an ongoing breach).  The United States Federal District Court for the Southern District of New York, in a case previously cited by this Court, ably explained the requirements and limitations of a continuing breach extension of the statute of limitations:

> [Plaintiff]'s contract claim is not barred by the statute of limitations because she appears to be alleging a "continuing breach," i.e. a breach that while beginning in 1999 continues to accrue through the present day.  Where a contract calls for continuous performance, it is "capable of a series of 'partial' breaches, as well as a single total breach by repudiation or by such a material failure of performance when due as to go 'to the essence' and frustrate substantially the purpose for which the contract was agreed to by the injured party." 4 Corbin on Contracts, Ch. 53 § 956 (1951); *see also Won's Cards, Inc. v. Samsondale/Haverstraw Equities, Ltd.*, 165 A.D.2d 157, 163, 566 N.Y.S.2d 412 (N.Y. App. Div. 1991) (recognizing continuing breach concept).  If the breaches are partial and ongoing, each one re-commences the statute of limitations such that damages can be awarded beginning "from the date calculated by

> subtracting the limitations period from the date of filing." *West Haven v. Commercial Union Ins. Co.*, 894 F.2d 540, 546 (2d Cir. 1990).

*Kwan v. Schlein*, 441 F.Supp.2d 491, 501 (S.D.N.Y.2006); *see also Ohio Environmental Dev. L.P. v. Ohio Environmental Protection Agency*, 10th Dist. No. 09AP-683, 2010-Ohio-414, ¶ 12 (citing and discussing *Kwan*).

{¶ 17} Fitting Agrawal's case within the ongoing breach extension discussed in *Kwan* is problematic. Although Agrawal in one sentence of his brief mentions "ongoing" obligations of the University, he does not in any fashion, plainly or even inferentially argue that his case is exempted from the otherwise applicable statute of limitations because of a continuing breach. (Agrawal Brief at 23.) "[T]he burden of affirmatively demonstrating error on appeal rests with the party asserting error. * * * It is [] not appropriate for this court to construct the legal arguments in support of an appellant's appeal." (Citations omitted.) *State ex rel. Petro v. Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, ¶ 94 (10th Dist.).

{¶ 18} In addition, neither Agrawal's complaint nor his contract documents states or alleges that the sums which he seeks for the benefit of his research were to be provided on a continuous or renewing basis year to year. (Compl. in passim.) The breaches his complaint does allege, all took place long ago (in 1998, 2006, or 2008). (Compl. at ¶ 5, 7, 9.) Because the Court of Claims' review of the motion to dismiss pursuant to Civ.R. 12(B)(6) was constrained to the four corners of the complaint and attachments thereto, the Court of Claims had no evidentiary basis to find that any breaches had been alleged in the complaint to have occurred within the past two years; thus, there was no basis to avoid concluding that Agrawal's cause of action was time-barred. *See Velotta* at paragraph three of the syllabus; Civ.R. 12(B); Civ.R. 10(C).

{¶ 19} From as best we can tell from the record and the briefs filed in this appeal, had Agrawal initially filed in the Court of Claims, a tolling of the statute of limitations could have occurred by operation of law.[3] *Id. See also Conley v. Shearer,* 64 Ohio St.3d 284,

---

[3] According to his brief, Agrawal filed his original claims for breach of contract and violation of federal civil rights statutes against the University of Cincinnati and "related individuals" on October 1, 2010 in the common pleas court of Hamilton County. (Agrawal Brief at 1.) It was not until November 16, 2015 that Agrawal filed his complaint with the Court of Claims. *Id.* at 2. We note that R.C. 2743.02(F) requires that

> [a] civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was

286-87 (1992). But Agrawal filed first in the common pleas court, was subject to his case's removal to a federal court for a period of time, refiled in the court of common pleas and appealed the common pleas court's decision that he was required to bring his claims in the Court of Claims in the first instance. We see nothing in the history of this case that tolls the statute of limitations.

{¶ 20} Thus we agree with the Court of Claims that Agrawal's complaint shows on its face that pursuant to Civ.R. 12(B)(6) his claims as pled are time-barred under the two-year statute of limitations as set forth in R.C. 2743.16. We overrule Agrawal's sole assignment of error.

## C. Jurisdiction

{¶ 21} In addition to the statute of limitations issue, the Court of Claims held pursuant to Civ.R. 12(B)(1) that it lacked jurisdiction over Agrawal's claims because such claims should have been addressed through a collective bargaining agreement procedure. (Entry of Dismissal at 2-3.) Agrawal argues that this is error since the First District Court of Appeals already determined that jurisdiction was only proper in the Court of Claims and his claims concern terms of his contract that are not the subject of any collective bargaining agreement. (Agrawal Brief at 13-23.)

{¶ 22} No collective bargaining agreement was before the Court of Claims, nor is one part of the record on appeal, and no such collective bargaining agreement is referenced in any of the terms of Agrawal's contract which he claims was breached. (Exs. 1-2, Compl.)

---

manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner *shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under* section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action. The officer or employee may participate in the immunity determination proceeding before the court of claims to determine whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code.

(Emphasis added.) The record does not elucidate whether Agrawal's original complaint before the common pleas court alleged conduct by the individuals who were University officials that would thwart personal immunity for them. But Agrawal's brief does not distinguish that he did not allege against these individuals the violation of federal civil rights claims. Unless he clarified in his original complaint that they were acting within the scope of their employment, he was obliged to have first sought the decision of the Court of Claims as to whether these individuals were entitled to personal immunity. *Id.*

{¶ 23} The problem with the Court of Claims' decision as to Civ.R. 12(B)(1) is that it found it lacked jurisdiction based on nothing that existed in either the complaint or that constituted "pertinent evidentiary materials." *Windsor House, Inc.* at ¶ 9. This is incorrect. The Court of Claims should have denied the Civ.R. 12(B)(1) motion and granted just the Civ.R. 12(B)(6) on account of the statute of limitations having run. R.C. 2743.16.

## IV. CONCLUSION

{¶ 24} Agrawal's complaint and attached materials demonstrated on their face that his claims as pled therein were time-barred by the two-year statute of limitations pursuant to Civ.R. 12(B)(6). Pursuant to Civ.R. 12(B)(1) we determine de novo that the Court of Claims lacked jurisdiction because Agrawal's time-barred complaint denies the Court of Claims jurisdiction in the first instance.

{¶ 25} This Court overrules Agrawal's single assignment of error and affirms the dismissal by the Court of Claims pursuant to Civ.R. 12(B)(6), but we reverse the judgment of the Court of Claims rendered pursuant to Civ.R. 12(B)(1) that it lacked jurisdiction on the basis of a collective bargaining agreement, since there was no evidence of this in the record. Accordingly, Agrawal's complaint in the Court of Claims is dismissed.

{¶ 26} The Court of Claims of Ohio is hereby ordered to dismiss Agrawal's complaint by an entry consistent with this decision.

*Judgment affirmed on other grounds.*

BROWN and SADLER, JJ., concur.