In re FIRST INTERREGIONAL ADVISORS CORPORATION, Debtor.

First Interregional Equity, Corporation,

Richard W. Hill, Trustee Under the Securities investor Protection Act, First Interregional Equity Corp., and Harrison J. Goldin, Plan Administrator for First Interregional Advisors Corp., and by Order of this Court as Exclusive Owners of all the Assets and Rights of Fed Funds, Inc., Plaintiffs,

v.

First Capital Services, Inc. of Florida, First Capital Services of Virginia, First Capital, Inc., Larry Schwartz and Fred Horwin, Defendants.

Bankruptcy Nos. 97–22513(RG), 97–02165(SIPA)(RG). Adversary No. 97–2840.

United States Bankruptcy Court, D. New Jersey.

Dec. 14, 2001.

Sills Cummis Zuckerman Radin Tischman Epstein & Gross, P.A. by A. Ross Pearlson, Newark, NJ, for Harrison J. Goldin, Chapter 11 Trustee of First Interregional Advisors Corp.

McCarter & English, L.L.P., by William H. Horton, Newark, NJ, for Richard W. Hill, SIPA Trustee for First Interregional Equity Corporation.

Larry Schwartz, Boca Raton, FL, Defendant, pro se.

## OPINION

ROSEMARY GAMBARDELLA, Chief Judge.

### MATTER BEFORE THE COURT

Before the Court is a Motion for Partial Summary Judgment brought by Richard W. Hill, Esq., the SIPA Trustee for First Interregional Equity Corp. ("SIPA Trustee") and Harrison J. Goldin, Plan Administrator for First Interregional Advisors Corp. (collectively, "Plaintiffs" or "Trustees"). Plaintiffs seek Summary Judgment on the Sixth Count of the Adversary Complaint in the matter of *Hill, et al v. First Capital Services, Inc., et al*, adversary number 97–2840. The sixth count of the adversary complaint alleges that defendants Larry Schwartz ("Schwartz") and Fred Horwin ("Horwin") respectively the President and Treasurer of First Capital Services, Inc. of Florida ("FCS") personally guaranteed loans made by FedFunds, Inc. ("FedFunds") to FCS. The complaint also alleges that Schwartz guaranteed a $1.5 million loan by FedFunds to First Capital, Inc. ("FCI"). Plaintiffs, as sole asset holders of FedFunds by Orders of this Court, seek to enforce these guaranties for the benefit of the First Interregional Advisory Corporation ("FIAC") and First Interregional Equity Corp. ("FIEC") estates.[1]

Defendants Schwartz and Horwin filed a joint opposition brief on May, 15, 2000 and on September 20, 2001, the Trustees filed their responsive letter brief. By letter to this court dated October 15, 2001, counsel for the Trustees requested an adjournment as to defendant Horwin, on account of ongoing settlement negotiations. The motion was therefore heard, and the instant ruling applies, only as to defendant Schwartz.

The Defendant opposes the motion, arguing (1) the motion is premature; (2) Plaintiffs fail to prove liability for the underlying debt; and (3) material alterations of the risk relationship relieve the guarantors of liability.

A hearing was conducted on November 1, 2001. The following constitutes this Court's findings of fact and conclusions of law.

### PROCEDURAL HISTORY

On March 5, 1997, FIAC filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the District of New Jersey. As of the date FIAC filed its Chapter 11 petition, there were approximately 2000 investors who purchased what they believed to be interest in leases. The Securities and Exchange Commission (the "SEC") has alleged, and the Trustee has confirmed, that FIAC's principals engineered a massive fraudulent scheme whereby numerous interests in the same leases were sold to multiple investors. These investors comprise the majority of the creditor body of FIAC's estate.

On March 6, 1997, the SEC filed a complaint in the United States District Court

---

1. As a result of a Complaint dated March 27, 1997, and filed on March 31, 1997, in the matter of *Richard W. Hill v. Fed Funds, Inc., Sports Entertainment Group, Inc., First Interregional Ins. Agency, Inc., First Interregional Insurance Services, First Interregional Financial Corp., and First Interregional Management Corp.*, Adv. No. 97–2310, filed against Fed Funds by the Trustee for FIAC and the SIPA Trustee for FIEC, Orders were entered by this Court on April 14, 1997 and July 25, 1997 which adjudge, among other things, that "[a]ll assets, operations, documents, or other property in the possession, custody and control" of Fed Funds are "the exclusive property of and under the exclusive control of" the Chapter 11 Trustee and the SIPA Trustee.

for the District of New Jersey against FIAC, FIEC and Richard Goettlich alleging, *inter alia*, that the defendants participated in a massive fraudulent "ponzi" scheme.

On March 10, 1997, following the filing by the Security Investor Investment Corp. ("SIPC") of an Order to Show Cause, the Honorable Maryanne Trump Barry, U.S.D.J., entered an Order adjudicating that the customers of FIEC are in need of the protection afforded by the Securities Investors Protection Act ("SIPA"), 15 U.S.C. § 78 aaa *et seq* (1977). On the same day, Richard W. Hill, Esq. was appointed Trustee (the "SIPA Trustee") for the liquidation of FIEC's business.

On March 13, 1997, this Court entered an Order directing the appointment of a Chapter 11 operating trustee for FIAC pursuant to Section 1104 of the Code. Thereafter, Harrison J. Goldin was appointed Chapter 11 Trustee (the Chapter 11 Trustee) and duly qualified.

## FACTS

Larry Schwartz is president and 50% shareholder of FCI, a Virginia corporation formed in 1995. He is also president, 75% shareholder, and a member of the board of directors of FCS.[2] The central issue in the instant Adversary Proceeding and the basis for Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion") relates to the force and scope of the two Guarantees. The following is a synopsis of the relevant agreements between the Defendant and FedFunds which surround the making of the Guarantees.

### FCI Guaranty

On April 24, 1995, Willis V. Beale, president of FedFunds, and Larry Schwartz as President of FCI, signed a "Master Financing Agreement" which established the parameters of the business relationship between FedFunds and FCI in which FedFunds would finance certain of FCI's lease transactions. *See* Certification of A. Ross Pearlson ("Pearlson Certif."), Exh. E.

On November 10, 1995, FedFunds advanced $1.5 million to FCI for the purpose of extending an asset-based loan to Southwest Florida Aviation, Inc. ("SWF"). *See* Defendants' Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Defendant's Brief") at 2. On that date, SWF and other entities issued to FCI a promissory note ("SWF Note") in principal amount of $1.5 million. *See* Pearlson Certif. Exh. F, at 1, ¶ B.

In connection with that loan, on March 28, 1996, FedFunds and FCI executed an "Agreement and Assignment of Note" (the "Assignment Agreement"). Simultaneously, Schwartz for FCI also executed a Negotiable Promissory Note (the "FCI Note") to FedFunds for the loan. *See* Pearlson Certif. Exh. G. Under the Assignment Agreement, all interest and rights to collection on the SWF Note were assigned to FedFunds as security for the loan. It also provides that FCI's obligation to make payments to FedFunds under the FCI Note "shall be contingent and dependent upon FCI receiving payment [from SWF] under the SWF Note." *See* Pearlson Certif. Exh. F at 2, ¶ 4.

Under the section heading "Joinder and Guaranty" the Assignment Agreement provided that "Larry Schwartz hereby joined in the execution of this Assignment

---

**2.** When the Master Financing Agreement and the Assignment Agreement were executed, FCI and FedFunds were Virginia corporations. *See* Pearlson Certif. Exh. E at 1, F at 1.

When the Receivables Agreement was executed, FCS was a Florida Corporation and FedFunds a Virginia Corporation.

and Agreement for the purpose of guaranteeing the payment and performance of [FCI] hereunder." *Id.* Schwartz executed the Assignment Agreement on behalf of FCI, and signed the Joinder and Guaranty, in his individual capacity.

After a series of rollovers, SWF defaulted. Neither FCI nor FedFunds received payment on the SWF note. *See* Pl.'s Br. at 7.

**FCS Guaranty**

On July 10, 1995, FedFunds and FCS entered into the Master Assignment of Receivables Agreement ("Receivables Agreement"). The agreement was to govern their relationship from July 1995 through at least April 1996. It provided that FedFunds agreed to lend FCS up to a maximum of $5 million, and FCS agreed to repay the loans at 8% over prime per year plus a .500% origination fee. *See* Pearlson Certif., Exh. B, ¶¶ 2.1, 2.2. Any advances made by FedFunds to FCS were to be repaid within ninety days or "within three (3) business days after written notice from FedFunds" to FCS in the event of a default. *See* Pearlson Certif. Exh. B, ¶ 2.5.

In conjunction with the Receivables Agreement, on July 25, 1995, Defendants Schwartz and Horwin executed a "Personal Guaranty and Joinder". *See* Pearlson Cert., Exh. B at 6. The Guaranty states in relevant part:

> The undersigned, upon review of this Agreement and all related documents, hereby personally, absolutely and unconditionally guarantee the representations and warranties of [FCS] herein and the payment and performance of all of [FCS's] obligations under this agreement. The undersigned shall be primarily liable for such obligations and Fed-

> Funds may invoke the benefits of this Guaranty before pursuing any remedies against [FCS] and before proceeding against any collateral for such obligation.

*Id.*

Between July 1995 and April 1996, FedFunds advanced a total of $4.8 million to FCS. *See id.* The advance of these monies is undisputed. Def's Br. at 3. At oral argument, Plaintiffs assert that the unpaid balance is at least $8,011,646.90, which includes loans and interest for the funding of three major projects: the Pleasant Green transaction, the Q-Pack transaction and the JBC Construction project.[3] *See* Pl.'s Br. at 5.

**Memorandum of Understanding**

On April 18, 1996, First Capital and FedFunds executed a Memorandum of Understanding (the "Memorandum") which "set out the basic understandings and agreements" between FedFunds and FCI/FCS as to "how the companies are going to conduct an expanded business relationship for the next twelve (12) months". FCI/FCS granted FedFunds a right of first refusal on all of its factoring, lease and letter of credit transactions. FedFunds increased the amounts of the FCS/FCI credit facility for factoring from $5 million to $15 million. FedFunds also added a commitment of $10 million for leasing transactions and $5 million for letters of credit transactions.

The Memorandum also set forth "additional terms, conditions and procedures". *See* Pearlson Certif., Exh. C. The Memorandum does not make mention of any prior agreements, nor does it contain any integration clause. The Memorandum contains no reference which relates to the

---

**3.** In the Chapter 11 proceedings of First Capital Services Inc., United States Bankruptcy Court, Southern District of Florida, 00– 32103–BKC–PGH, the debtor-in-possession scheduled FedFunds' claim (# 230) against FCS at $8,011,646.90.

obligations of the Defendants as Guarantors. *See id.* No other writing has been produced which purportedly affects the obligations created under the Guaranties. *See* Pl.'s Br. at 5.

### RELIEF SOUGHT

Movant seeks two measures of relief. First, Movant seeks an order of summary judgment finding that Schwartz is liable on the FCI guaranty, for damages in the principal amount of the $1.5 million loan from FedFunds to FCI. Second, Movant seeks an order of summary judgment finding that Schwartz is liable on the FCS guaranty for advances made by FedFunds to FCS under the Master Receivables Agreement, plus interest and fees.[4] Pl.'s Ltr. Resp. at 6.

### ANALYSIS

#### Summary Judgment Standards

Fed.R.Civ.P. 56(c), made applicable to these proceedings by Fed. R. Bankr.P. 7056(c), provides, in relevant part, that a court shall grant summary judgment only "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Fed R. Bankr.P. 7056(c). The rule continues, "[a] summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." Fed.R.Civ.P. 56(c); Fed. R. Bankr.P. 7056(c). The Supreme Court has explained that an "issue of material fact" is a question which both (1) must be answered to determine the rights

of the parties under the substantive law, and (2) can only properly be resolved "by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also In re Adventist Living Centers, Inc.,* 174 B.R. 505, 510 (Bankr.N.D.Ill. 1994) ("[T]he existence of a material factual dispute is sufficient [to deny summary judgment] only if the disputed fact is determinative of the outcome under the applicable law.") (citations omitted).

The party moving for summary judgment bears the burden of proving the absence of any "genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Fairbanks Morse & Co. v. Consolidated Fisheries Co.,* 190 F.2d 817, 824 (3d Cir.1951). Additionally, in reviewing the record, the court must give the nonmoving party the benefit of all reasonable inferences. *See Sempier v. Johnson & Higgins,* 45 F.3d 724, 727 (3d Cir.1995). However, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Therefore, "[i]f the evidence (offered by the nonmoving party) is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citation omitted).

The purpose of summary judgment is to avoid a trial which is unnecessary and results in delay and expense, by promptly disposing of any actions in which there is

---

4. There does not appear to be any basis to support the position that Schwartz increased his exposure to guaranty FCS's obligation beyond that created under the initial $5 million facility (plus any interest and fees allowed). The Memorandum of Understanding neither states nor alludes to any such expansion of Schwartz's obligation.

no genuine issue of material fact. *See Tomalewski v. State Farm Life Ins. Co.*, 494 F.2d 882, 884 (3d Cir.1974). Summary judgment is a "drastic remedy" which is not to be granted liberally. Indeed, the Third Circuit has stated that "where there is the slightest doubt as to the facts" of a case, summary judgment may not be granted. *Tomalewski*, 494 F.2d at 884, *See also, Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981).

■ Defendant asserts that there are a number of unresolved material issues of fact which prevent the court from ruling on the motion for summary judgment. How much was advanced by FedFunds to FCS when it stopped funding; how much was advanced to FCS by FIAC; how much was advanced by FedFunds to FCI rather than FCS; and how much is owing to FCS on counter claims against plaintiff. Defendant also takes issue with the absence of a precise dollar amount sought by the movant.

These issues present no impediment for the instant motion seeking summary judgment. Fed.R.Civ.P. 56(c) explicitly permits the court to render a summary judgment on the issue of liability. Precise damages and appropriate amounts for set-off may be determined at a subsequent proceeding.

**Choice of Law**

■ Where state law governs in a federal case, the federal court must apply the choice of law doctrine from the forum state. *See McFarland v. Miller*, 14 F.3d 912, 917 (3rd Cir.1994); *see also In re Alcon Demolition, Inc.*, 204 B.R. 440, 446 (Bankr.D.N.J.1997) ("A federal court applies the choice-of-law doctrine in the forum in which it sits"). New Jersey uses a governmental interest test to decide choice of law issues.

The Third Circuit has held that New Jersey's governmental interest test consists of a two part analysis. *See McFarland*, 14 F.3d at 917. First, the court ascertains "the governmental policies evidenced by the laws of the related jurisdiction." *Id.* Second, the court examines the "factual contact between the parties and each related jurisdiction. This approach is primarily concerned with the qualitative nature of the contacts' rather than the number of them." *Id.* (internal citations omitted).

■ Based on this two part analysis, either Virginia or Florida state law could be applied to this dispute. Both forums apply similar standards to the enforcement of guaranty notes. Virginia courts have held that when an absolute guaranty of repayment on a loan is issued, the lender may proceed against the borrower's guarantor even if the lender has not pursued the borrower to the fullest extent. *See United States v. Houff*, 202 F.Supp. 471, 476 (W.D.Va.1962). Florida courts also follow the rule that when a guaranty is made without conditions, a lender may initiate proceedings against the borrower's guarantor even if the lender has not exhausted all remedies against the principle debtor. *See Federal Deposit Insurance Corporation v. University Anclote Inc.*, 764 F.2d 804, 806 (11th Cir.1985) (upholding a Florida District Court decision that the guarantor "can be held liable for his separate and independent promise to pay the full amount of [debtor's] obligation" even if debtor could not be pursued). Therefore, neither forum's governmental policies will be offended by the application of the other forum's law on this matter.

Here, both Virginia and Florida were involved. FCI and FedFunds are incorporated in the state of Virginia, *see* Pearlson Certif. Exh. F at 1, and a number of acts surrounding the subject transactions oc-

curred in Virginia. FCS is incorporated and has offices in the State of Florida, *see* Pearlson Certif. Exh. B, and the Guarantees which are the central issue of this motion were signed by the Defendants in Florida. *See* Pearlson Certif. Exh. B at 6 & Exh. G at 3. Therefore there are factual, qualitative contacts in both forums.

■■ In the instant matter, however, the parties have charted their own course. Both contracts at issue contain a choice of law clause which selects Virginia law for the resolution of all disputes arising out of the agreements. *See* Pearlson Certif. Exh. B at ¶ 10.6 and Exh. E at ¶ 24. In cases where there is no superceding governmental interest involved, a forum selection clause will usually be enforced. *See M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (stating that a "forum clause should control absent a strong showing that it should be set aside.")

In 1995, then Chief Judge William H. Gindin held that New Jersey bankruptcy courts should follow the Supreme Court and enforce forum selection clauses. *See In re Michael Kaplan and Morris Kaplan, Debtors,* 186 B.R. 871 (Bankr.D.N.J.1995) (enforcing a contractual clause which stipulated governance of New York law over all disputes related to the contract). This Court will continue to follow the Supreme Court's reasoning and will enforce the forum selection clause provided there is no evidence of fraud or overreaching, the interests of the forum state are served, and the clause is not unreasonable. *See Bremen,* 407 U.S. at 12, 92 S.Ct. 1907.

Both Plaintiffs and Defendant have presented arguments for their case under Florida and Virginia state law, and neither party has proposed any reason why this Court should not honor the contracted for provision. As there is no supervening reason why the contract between these parties should not be given full force and effect by this Court, the forum selection clause decides the choice of law question and will be enforced. In this matter, Virginia State law will govern.[5] *See id.*

### Enforcement of the Guaranty Notes

■ The Virginia State Court of Appeals, in the case of *Preston W. Ives v. J.T. Williams,* 143 Va. 855, 129 S.E. 675 (1925), established the rule for enforcement of guarantees in that state. In *Ives,* the plaintiff sought to bring a claim against the guarantor and the principal debtor simultaneously, and the defendant contended that the action could not be sustained until all remedies against the principal debtor had been exhausted. *See id.* The defendant also asserted that "plaintiff failed to allege and prove that he had given ... timely notice of the default ... and that such allegations and proof were essential before an action could be maintained against [defendant], the guarantor." *Id.* at 859, 129 S.E. at 676. The Virginia court found in favor of the plaintiff and held that a creditor does not have the obligation to notify the guarantor of the default and is not required to exhaust all remedies against the principal debtor prior to commencing an action against the guarantor. *See id.* at 863, 129 S.E. at 677.

The *Ives* court stated that an absolute guaranty becomes immediately enforceable upon default and that "no duty rested upon the creditor to endeavor first to collect from the debtor." *Id.* at 862, 129 S.E. at 677. A guaranty is absolute unless it is made conditional by the guaranty itself stating a condition precedent to the liability of the guarantor. *See id.* at 860, 129

---

**5.** The Court notes that application of Virginia law as opposed to Florida law is not disposi-

tive. The same result would obtain if Florida law would govern, *see, infra* n. 5, n. 6.

S.E. at 676. The court further stated that "whatever proof is necessary to support an action against the principal will be sufficient in an action against the guarantor." *Id.* at 861, 129 S.E. at 677.

The *Ives* opinion, issued in 1925, has not, to this Court's knowledge, been distinguished or contradicted by any subsequent Virginia holding. Recent holdings from Virginia state courts and the federal courts in the District of Virginia further support *Ives*. *See Chrysler Credit Corporation v. Edward R. Curley*, 753 F.Supp. 611 (E.D.Va.1990); *See also Glover v. Mundy*, 1988 WL 619192 (Va. Cir. Ct.) ("In Virginia, when the guarantee is absolute, demand on the principal is not necessary."); *United States v. Houff*, 202 F.Supp. 471, 475–76 (W.D.Va.1962) ("Where the guaranty is absolute, as in the case of a guaranty of payment, the guarantor is bound immediately on the failure of the principal debtor to perform ... [and] the guarantee may at his election proceed against either the guarantor or the principal obligor.")

Defendant, relying on *William Schluderberg—T.J. Kurdle Co. v. Franklin Trice*, 198 Va. 85, 92 S.E.2d 374 (Va.1956), asks that this court impose the limitations of a conditional guaranty on the instant guarantees. *See* Def.'s Br. at 12.

The guarantees in this case, however, are not analogous to *Schluderberg*. The *Schluderberg* guaranty clause was silent as to whether or not it was conditional, *see id.*, at 86, 92 S.E.2d 374. The instant guarantees, however, were unconditional by their terms. The FCS Guaranty executed in conjunction with the Receivables Agreement and signed by both Defendants reads, in part: "The undersigned, upon review of this Agreement ... personally, absolutely and *unconditionally* guaranty ... the payment and performance of all [FCS's] obligations". *See* Pl.'s Br. at 4 (emphasis supplied). The FCI Guaranty, signed by Schwartz, is also a personal guaranty of "the *payment* and performance of [FCI]". *See id.* at 7 (emphasis supplied). By its terms, the obligation is for a definite amount and is therefore unconditional as well. *See Schluderberg* 198 Va. at 88, 92 S.E.2d 374 (stating that an absolute guarantee of payment for a definite amount, at a definite time, renders the obligation unconditional).[6]

### Schwartz's obligation under the FCI guaranty

 Notwithstanding the enforceability of the guarantees, summary judgment under the FCI Guaranty cannot be granted. This is due to the conditional nature of FCI's *primary loan repayment obligation* in the Assignment Agreement. As explicitly stated therein, "payments to FedFunds shall be made contingent and dependent upon FCI receiving payment under the SWF Note." Pearlson Certif. Exh. F, ¶ 4. Plaintiff has not shown that FCI received payment under the SWF Note. The nature of a guarantor is to perform the obligation of the primary obligor when it is due, *See Schluderberg* 198 Va. at 88, 92 S.E.2d 374. Because FCI's obligation has not yet matured, the Defendant's guaranty obligation has not yet been triggered.

Based on language in *Ives*, Plaintiff attempts to establish that the only limitations applicable are those within the guaranty clause. The *Ives* court stated that "a guaranty is deemed to be absolute unless *its terms* import some condition precedent to the liability of the guarantor." *See Ives* at 860, 129 S.E. at 676 (citing 28 C.J. 895 and 972) (emphasis added). Plaintiff reads into the above language that conditions

---

6. A similar result would obtain under Florida law. *See, Anderson v. Trade Winds*, 241 So.2d 174, 177 (Fla.Ct.App.1970) (discussing liability of absolute guarantors).

outside the terms of the guaranty clause are irrelevant to the guaranty.

*Ives*, however, was discussing the parameters of the guarantor's obligation *upon default* by the principal obligor. A necessary condition which has not been satisfied will excuse the obligor's performance, negating any claim of default. At that point, the guarantor's duty will not yet have arisen. *See, e.g.*, 38 Am.Jur.2d Guaranty § 70 (1999) ("the guarantor becomes . . . primarily liable when the principal obligation has matured and is not performed"); § 76 (guarantors are liable only when obligor is liable on principal obligation). Here, because movant has not established that FCI received payment under the SWF Note, the principal obligation remains unmatured along with the guaranty. Additional cases cited by Plaintiff[7] do not establish guarantor liability before the primary obligor's performance duty ripens.

**Schwartz's obligation under the FCS guaranty**

 Plaintiff also seeks summary judgment based on the FCS Guaranty. Defendant agrees that FedFunds advanced approximately $4.8 million to FCS under the Master Receivables Agreement and that principal and interest are due and owing by FCS. Defendant does not appear to dispute the original validity of his personal guaranty on the Receivables Agreement.

Defendant first asserts that the FCS loan is not yet due. Under the terms of the Receivables Agreement, § 2.5, an assignment advance from FedFunds to FCS which was due must be paid within 3 business days of receipt of notice from Fed Funds to FCS. Defendant argues that since FedFunds did not provide written notice, the monies are not due, and

Schwartz not liable as guarantor. This technical deficiency, however, was cured by the Trustees. As counsel for the Trustees explained at oral argument, one of the actions taken by the Trustees was to give requisite notice and demand repayment of the FCS advances.

The Defendant also argues that the Memorandum of Understanding superseded the Receivables Agreement and released Schwartz from the guaranty. Specifically, Defendant asserts that the Memorandum materially altered their relationship in that it "expanded their business relationship" and increased the total from an initial commitment of $5 million to a total of $30 million and for the first time provided financing for leases and letters of credit. Defendant testified that it was his understanding, and the intent of the parties, that the Memorandum of Understanding fully replaced and superseded the Receivables Agreement as well as the attached personal guarantees. Pearlson Certif. Exh. A, 83–84.

These arguments are unavailing. It is uncontested that Defendant's Guaranty obligation existed prior to the execution of the Memorandum of Understanding. The Memorandum does not reflect any intent to modify that obligation. It does not refer to the guaranty at all nor does it contain an integration clause. The Memorandum contains no ambiguity, and parol evidence is inadmissible to modify the unambiguous writing. *See, Frieden v. Cluett, Peabody & Co.*, 142 Va. 738, 744, 128 S.E. 61 (1925); *Chase Manhattan Bank v. Rood*, 698 F.2d 435, 436 (11th Cir.1983); *Florida State Bank of Tallahassee v. Honey*, 407 So.2d 1082, 1083 (Fla.Ct.App.1982).

---

**7.** *Chrysler Credit v. Curley* 753 F.Supp. 611, 620 (E.D.Va.1990) (generally upholding absolute guarantees) and *Anderson v. Trade Winds Enterprises*, 241 So.2d 174, 178 (Fla.Dist.Ct. App.1970) (allowing creditor to *proceed* against absolute guarantor without first *proceeding* against primary obligor).

Examination of Memorandum reveals no indication that FedFunds intended to release Schwartz from his guaranty obligation on the loans under the Receivables Agreement. Schwartz himself negotiated and executed the Receivables Agreement and the Memorandum, and cannot argue that anything here occurred without his knowledge and consent. *See, Bennett v. First Nat'l Bank of Norfolk,* 213 Va. 672, 194 S.E.2d 903, 907 (1973) (stating the general rule that a guarantor of note is discharged by renewal or extension of payment when made without his consent).[8]

In sum, nothing on the current record supports any other conclusion. Review of the operative documents leaves this court without the slightest doubt that Defendant's personal guaranty remained in place and was neither released nor discharged by the execution of the Memorandum of Understanding. *See also, Frieden v. Cluett, Peabody & Co.,* 142 Va. 738, 742, 128 S.E. 61 (1925) (excluding parol evidence and affirming judgment on guaranty); *Midlantic Commercial Leasing Corp. v. Donaldson,* 38 Va. Cir. 520 (Va. Cir. Ct.1994) (excluding parol evidence and granting defendant's motion for summary judgment); *Johnson v. First Nat'l Bank,* 81 B.R. 87, 89 (Bankr.N.D.Fla.1987) (holding that even though principals did not sign consolidation documentation as personal guarantors, old guaranty remained in force).

### CONCLUSION

In accordance with the laws of the state of Virginia, Plaintiff's Motion for Partial Summary Judgment as against defendant Schwartz on the Sixth Count of the Complaint is hereby DENIED on the FCI Guaranty. The motion is hereby GRANT-

ED as against defendant Schwartz on the FCS Guaranty as to liability, on the principal amount of $4.8 million representing advances made by FedFunds to FCS under the Receivables Agreement. The exact amount of damages, including the imposition of pre-judgment interest, costs and fees, shall abide further hearings.

An order shall be submitted in accordance with this Opinion.

---

**8.** Here too, Florida law directs the same result. *See, Equity Title, Inc. v. First Nat'l Bank & Trust,* 564 So.2d 1182, 1184 (Fla.Ct.App. 1990) (stating that material alteration only releases guarantor when made without his consent).