[630 NYS2d 584]

INTER-POWER OF NEW YORK, INC., Appellant, v NIAGARA MO-
HAWK POWER CORPORATION et al., Respondents.

Third Department, July 27, 1995

**APPEARANCES OF COUNSEL**

*Chadbourne & Parke,* New York City *(Thomas J. Hall* and *Robert S. Pruyne* of counsel), and *Arkin, Schaffer & Supino,* New York City *(Stanley S. Arkin, Hyman L. Schaffer, Joseph Lee Matalon* and *David J. Kekst* of counsel), for appellant.

*Kevin P. Glasheen,* Albany, and *Swidler & Berlin,* Washington, D.C. *(John R. Ferguson, Timothy A. Nagu, William J. Mertens* and *Don W. Blevins* of counsel), for Niagara Mohawk Power Corporation, respondent.

**OPINION OF THE COURT**

CREW III, J.

This action arises out of a power sales contract entered into between plaintiff and defendant Niagara Mohawk Power Corporation on or about February 16, 1988, under the terms of which Niagara Mohawk agreed to purchase power generated by a plant to be constructed by plaintiff in the Town of Halfmoon, Saratoga County. Insofar as is relevant to this appeal, the contract required that the facility be operational by December 31, 1993, and Niagara Mohawk had the option of terminating the contract with plaintiff if this in-service deadline was not met. The contract further required that at least

12 months prior to the date of the initial operation of the facility, plaintiff provide Niagara Mohawk with satisfactory written notice that a firm supply of fuel was available; in the event plaintiff failed to do so, the contract was to become null and void.

Due to various delays, including difficulties in obtaining Public Service Law former article VIII certification from the New York State Board on Electric Generation Siting and the Environment (hereinafter the Siting Board), it became apparent that plaintiff was not going to be able to meet the December 31, 1993 in-service deadline.[1] By letter dated November 19, 1992, Niagara Mohawk advised plaintiff of its intention to enforce the in-service deadline[2] and requested that plaintiff provide written evidence of a firm supply of fuel as required under the contract. Although plaintiff took the position that it was under no obligation to provide fuel supply information at that point in time,[3] it nevertheless forwarded to Niagara Mohawk a letter from a supplier indicating that an understanding regarding "all essential commercial terms and conditions of a long-term supply contract" had been reached. In January 1993, Niagara Mohawk expressed dissatisfaction with plaintiff's response to its request for information and stated that it considered the agreement "null and void by its own terms".

Plaintiff thereafter commenced this action in March 1993 setting forth causes of action sounding in, *inter alia,* breach of contract. Niagara Mohawk answered and, along with the other named defendants, moved for summary judgment contending, *inter alia,* that plaintiff should be estopped from pursuing this action based upon certain representations it made before the Siting Board. Supreme Court dismissed plaintiff's ninth and eleventh causes of action based upon impossi-

---

1. Although the Siting Board ultimately granted plaintiff the requested certificate in September 1992 subject to a number of conditions, including plaintiff's ability to procure a new power sales contract, this Court subsequently annulled that determination *(Matter of Commonwealth of Mass. v New York State Bd. on Elec. Generation Siting & Envt.,* 197 AD2d 97, *appeal dismissed* 83 NY2d 999, *lv dismissed* 84 NY2d 919).

2. Niagara Mohawk previously had sent a similar letter to plaintiff in March 1992.

3. Plaintiff was of the view that the phrase "12 months prior to the date of initial operation of the [facility]" referred to the facility's actual on-line date, while Niagara Mohawk was of the view that such language referred to the projected in-service deadline of December 31, 1993.

bility and mutual mistake, respectively.[4] In March 1994, following extensive discovery, defendants moved for summary judgment dismissing the remaining counts of the complaint and plaintiff cross-moved for, *inter alia,* an order compelling further disclosure. Supreme Court granted defendants' motion and denied plaintiff's cross motion, concluding, *inter alia,* that each of the remaining causes of action hinged upon either waiver or estoppel and finding that plaintiff had failed to tender sufficient proof to raise a question of fact in this regard. This appeal by plaintiff ensued.

■ Initially, we agree with plaintiff that Supreme Court erred in characterizing its fourth cause of action for breach of contract as one necessarily based upon waiver or estoppel. This particular cause of action plainly flows from Niagara Mohawk's termination of the agreement based upon plaintiff's purported failure to tender sufficient written proof of a firm fuel supply, as required under paragraph two of the parties' agreement. Hence, such cause of action is in no way tied to the in-service deadline set forth in paragraph three of the agreement and, therefore, is not subject to a waiver or estoppel analysis.[5]

As to plaintiff's claim that it was not obligated under the terms of its agreement with Niagara Mohawk to tender such information in November 1992 *(see,* n 3, *supra),* we are of the view that the language contained in paragraph two of the parties' agreement concerning plaintiff's obligation to provide written evidence of a firm fuel supply 12 months prior to "the date of initial operation" of the facility unambiguously refers to the December 1993 in-service deadline. Hence, Niagara Mohawk was well within its rights to demand, in November 1992, that such information be supplied. We are also of the view, however, that unresolved factual issues exist with respect to the adequacy of plaintiff's response to this request for information and the reasonableness of Niagara Mohawk's termination of the agreement on this ground *(see, Blask v*

4. On appeal, this Court modified Supreme Court's order only to the extent of reversing the dismissal and, instead, rendering a declaration in favor of defendants (208 AD2d 1073).

5. To the extent that Niagara Mohawk contends that resolution of this issue is controlled by one of our prior decisions in this matter *(see,* 207 AD2d 617), we disagree. Although we previously have observed that "[t]he gravamen of the complaint is that Niagara Mohawk waived or was estopped from insisting on the stated [in-service] deadline" *(supra,* at 617), this appeal presents the first occasion we have had to address this particular cause of action.

*Miller,* 186 AD2d 958, 960; *Cross v Frezza,* 161 AD2d 927, 928-929). Accordingly, Niagara Mohawk is not entitled to summary judgment on this particular cause of action.

Plaintiff next contends that Supreme Court erred in determining that it had tendered insufficient proof to raise a question of fact with respect to waiver and estoppel. We disagree. A "[w]aiver is an intentional relinquishment of a known right and should not be lightly presumed" *(Frank Corp. v Federal Ins. Co.,* 70 NY2d 966, 968). An estoppel, on the other hand, may be imposed by law in the interest of fairness where one party, justifiably relying upon the word or conduct of another, changes its position to its detriment *(see, Nassau Trust Co. v Montrose Concrete Prods. Corp.,* 56 NY2d 175, 184). Although the proof necessary to raise a question of fact in this regard is, of course, substantially less than that required to establish either waiver or estoppel as a matter of law, we must nevertheless conclude that the statements and conduct upon which plaintiff relies are far too conclusory and equivocal to defeat Niagara Mohawk's motion for summary judgment as to the remaining causes of action.

The evidence relied upon by plaintiff consists primarily of statements made by Niagara Mohawk representatives in a March 10, 1989 letter, at and after meetings held on August 6, 1990 and February 5, 1991, and in documents filed by Niagara Mohawk with the Public Service Commission. The March 10, 1989 letter, which Niagara Mohawk contends was sent to plaintiff by mistake and, indeed, contains certain factual errors regarding the contract approval date and the in-service deadline, established only "general guidelines" for setting milestones in power purchase contracts to which Niagara Mohawk was a party and, in our view, is insufficient to raise a question of fact as to either waiver or estoppel.

We reach a similar conclusion regarding the representations allegedly made by Niagara Mohawk senior vice-president Michael Ranalli at or after the August 6, 1990 and February 5, 1991 meetings between plaintiff and Niagara Mohawk representatives. According to plaintiff, Ranalli stated at the August 6, 1990 meeting that an extension of a few months would be "no problem" and reassured plaintiff following the February 5, 1991 meeting that Niagara Mohawk would continue to work with plaintiff. In our view, although the phrases "no problem" and "we'll work with you" evidence, as Supreme Court found and Niagara Mohawk apparently does not dis-

pute,[6] a willingness to discuss an extension and renegotiate the in-service deadline, such words, viewed in the context of the then ongoing discussions between the parties, are not sufficiently specific and detailed and, indeed, are far too equivocal to warrant denial of Niagara Mohawk's motion. To the extent that plaintiff relies upon a memorandum Niagara Mohawk manager Gary Coram sent to Ranalli following the February 5, 1991 meeting, we note that this document stated only that Coram recommended granting the requested extension in exchange for a per kilowatt payment for each month of delay beyond the stated December 31, 1993 deadline, not that such an extension actually was approved or granted. In this regard, the record indicates that various Niagara Mohawk representatives testified at their respective examinations before trial that it was Niagara Mohawk's policy to require some sort of financial quid pro quo for any extension granted to a developer and that this issue was discussed, but not resolved, with plaintiff.

Finally, plaintiff points to a quarterly report filed by Niagara Mohawk with the Public Service Commission in April 1991 indicating that the expected in-service date for the project was June 1, 1994. The mere fact that June 1, 1994 was listed as the projected in-service date at that particular point in time, however, is not sufficient to raise a question of fact as to whether a waiver actually occurred or an estoppel should be imposed. Plaintiff's remaining arguments on this point have been examined and found to be lacking in merit.

Accordingly, we are of the view that Niagara Mohawk's motion for summary judgment as to the remaining causes of action was properly granted. In light of this conclusion, we need not address the applicability of Public Service Law § 110 (4).

MERCURE, J. P., CASEY, YESAWICH JR. and SPAIN, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motion dismissing plaintiff's fourth cause of action; said motion denied to that extent; and, as so modified, affirmed.

---

**6.** Niagara Mohawk does not expressly contend that Ranalli did not make these statements. Rather, Niagara Mohawk argues that such statements, even if true, which for purposes of this appeal we presume them to be, demonstrate only a willingness to renegotiate the in-service deadline and do not form the basis for either a waiver or estoppel.