■ FOURTH BRANCH ASSOCIATES MECHANICVILLE, Respondent-Appellant, v NIAGARA MOHAWK POWER CORPORATION, Appellant-Respondent. (And Another Related Action.) [754 NYS2d 783] —Carpinello, J. Cross appeals from an order of the Supreme Court (Sheridan, J.), entered July 9, 2002 in Albany County, which, inter alia, partially granted defendant's motion for summary judgment.

This case was last before this Court on an appeal from a 1995 order of Supreme Court (Harris, J.), which had granted defendant's CPLR 3211 motion to dismiss the complaint in its entirety (235 AD2d 962). After searching the four corners of the complaint for any legally cognizable claim, we determined that two of the many pleaded causes of action should have survived such a preliminary motion. Accordingly, we modified and reinstated causes of action sounding in breach of contract and, relatedly, breach of the duty of good faith and fair dealing (id.). After many years of discovery, the case is before us once again on cross appeals from an order of Supreme Court (Sheridan, J.), which partially granted defendant's motion for summary judgment and denied plaintiff's cross motion for the same relief. We agree with Supreme Court's detailed and thoughtful analysis of the pertinent legal issues and therefore affirm.

For our purposes, it is only necessary to trace the parties' dealings with each other back to a 1987 licensing agreement between plaintiff, a private entity involved in developing hydroelectric power generating facilities, and defendant, an investor-owned but publicly-regulated utility. As stated in our prior decision, the purpose of the 1987 agreement was to facilitate the redevelopment of a nearly century-old hydroelectric plant located on the Hudson River and owned by defendant. Pursuant to this agreement, defendant would continue its ownership of the plant, but plaintiff would bear all of the costs involved in its redevelopment, with plaintiff's anticipated gains

coming from the profitable sale of power to defendant. In 1987, the parties estimated that the cost of the redevelopment project would exceed $26 million. The plan was not without its difficulties. The parties intended to preserve the old powerhouse as a hydroelectric museum as part of the then existing continuum of structures, which included dams and a barge canal lock, all of which spanned the river. Plaintiff proposed to more than triple the plant's power output by tunneling through the bedrock under the old powerhouse in the middle of the river and installing new power generating turbines beneath the shored-up powerhouse superstructure.

Consistent with the terms of the 1987 licensing agreement, the parties entered into three additional agreements on August 14, 1989, namely, an operation and maintenance agreement, an energy sales agreement and a lease. The operation and maintenance agreement permitted plaintiff to operate the site pending government approvals of the redevelopment plan. In contrast, the energy sales agreement and the lease, both of which referenced 40-year terms, were clearly designed to govern the parties' relationship after the redevelopment plan had been accomplished. Although there is much disagreement as to why the planned improvements never occurred, suffice it to say that they did not, thereby precipitating the instant litigation.

The gravamen of plaintiff's surviving causes of action is that after the required federal license for the redevelopment project was issued in 1993, defendant breached the licensing agreement, the energy sales agreement and the lease (and the concomitant obligations of good faith and fair dealing relating to those agreements) by refusing to agree upon, and/or by failing to negotiate in good faith toward, "suitable" long-term electricity rates. In the absence of such rates, the argument continues, plaintiff could not obtain financing and thus could not construct the planned redevelopment.

We address first the propriety of Supreme Court's decision to dismiss the breach of contract claim. At the core of defendant's argument for summary judgment on this cause of action is a nullification provision in the energy sales agreement requiring its termination if the redevelopment plan is not accomplished by a certain timetable. Specifically, under the terms of the energy sales agreement, in the event all government approvals could not be obtained so as to permit commencement of the hydroelectric plant's construction within two years and completion of same, including the generation of electricity, within four years, then it "shall without further notice become null and void without further liability by either party to the other."

Since the requisite federal license was not issued until June 1993, construction clearly did not begin within two years of the 1989 agreement and a project of this magnitude could not possibly have then been completed within the remaining two months (i.e., by August 14, 1993). Thus, defendant argued, the energy sales agreement was null and void by its own terms and the breach of contract claim should be dismissed. In opposition, plaintiff contended that this reference to the hydroelectric plant in the energy sales agreement referred to the *existing* facility, and the contemplated improvements were those which had to be undertaken in accordance with the operation and maintenance agreement. Thus, according to plaintiff, because it performed some improvements to the *existing* facility and also generated electricity from it, it was not in default of the construction deadlines outlined under the energy sales agreement. We are unpersuaded by the latter argument.

Plaintiff's interpretation of the energy sales agreement is not only contradicted by its plain language, which is clearly intended to apply to a "redevelop[ed]" hydroelectric generating plant with an installed capacity of 17,000 kilowatts (the existing facility only had an installed capacity of 4,500 kilowatts), but it also ignores the fundamental nature of the contemplated relationship between the parties. To this end, we note that when contract interpretation is at issue, we must "examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought" (*Atwater & Co. v Panama R.R. Co.*, 246 NY 519, 524). In formalizing their venture in 1989, the parties explicitly contemplated construction deadlines for the planned redevelopment, which plaintiff ultimately did not and could not meet. Finding no basis to disagree with Supreme Court's resolution of plaintiff's alternative arguments that defendant should be precluded from relying on this contract language under the doctrines of, inter alia, waiver, estoppel and/or unclean hands, summary judgment was properly granted dismissing the breach of contract cause of action in its entirety.*

While the failure to timely commence the redevelopment

---

* Finding, as we do, that the breach of contract claim as it relates to the energy sales agreement was properly dismissed, it follows that the breach of contract claim as it pertains to the lease must also be dismissed since this latter agreement specifically contemplated the redevelopment project, which

project is fatal to plaintiff's breach of contract cause of action, we agree with Supreme Court that issues of fact preclude summary judgment in either party's favor on the good faith and fair dealing cause of action. To be sure, the regulatory environment had changed substantially between 1989 and 1993, when the final license was approved. Rates were substantially lower. In support of summary judgment on this cause of action, defendant argued that it tried to negotiate with plaintiff in good faith to agree upon a new set of rates that would be financially feasible for plaintiff yet consistent with its obligations to its shareholders and its customers. However fair defendant's proposals may seem, we simply cannot say that the issue can be resolved as a matter of law.

The claim of a breach of good faith and fair dealing implicates a review of the parties' conduct from 1987, not just after the issuance of the license in 1993. In our view, the licensing agreement "created present duties by both parties" (*Goodstein Constr. Corp. v City of New York*, 111 AD2d 49, 52, *affd* 67 NY2d 990) and its viability remained unaffected by the 1989 agreements, which contain no explicit directive that they were intended to replace or supercede the earlier agreement. On this record, numerous factual issues remain unresolved. For example, defendant has still failed to proffer an ironclad explanation for why it submitted the lease and energy sales agreement to the Public Service Commission in 1989 when it knew or should have known that to do so was premature (*see* 235 AD2d 962, 965, *supra*). Nor has it sufficiently rebutted plaintiff's allegations that it made assurances to plaintiff that it would amend the lease and the energy sales agreement to provide for suitable rates if plaintiff cooperated in delaying the license application process, conduct which purportedly assisted defendant in litigation with other parties. While these latter allegations were insufficient to create a question of fact as to whether defendant intentionally waived the construction deadlines in the energy sales agreement (*see Inter-Power of N.Y. v Niagara Mohawk Power Corp.*, 213 AD2d 110, 114-115), they are sufficient to create a question of fact as to whether defendant breached the spirit of the licensing agreement, a "peculiarly factual issue" (*Home & City Sav. Bank v Rose Assoc. I*, 175 AD2d 386, 389; *see also Just-Irv Sales v Air-Tite Bus. Ctr.*, 237 AD2d 793, 794-795).

---

never came to fruition, and thus the lease could not have had any operative meaning in the absence of a viable energy sales agreement. With respect to the licensing agreement, plaintiff acknowledged in its answers to interrogatories that any breach of this agreement consists of a failure to "negotiate in good faith," a claim subsumed in plaintiff's extant cause of action.

Finally, we agree entirely with Supreme Court's dismissal of plaintiff's claim for lost profits from the failed redevelopment project. Not only do the agreements at issue clearly reflect defendant's nonliability for such damages, but the Court of Appeals has aptly noted under similar circumstances that a contrary ruling "would have the anomalous effect of [awarding plaintiff] * * * profits from projected improvements which plaintiff would never have to construct" (*Goodstein Constr. Corp. v City of New York*, 80 NY2d 366, 374). To the extent not specifically discussed, the parties' remaining contentions have been considered and rejected as without merit.

Cardona, P.J., Crew III, Peters and Rose, JJ., concur. Ordered that the order is affirmed, without costs.