■ COLLEEN TREMONT, Respondent, v DENNIS TREMONT, Appellant, et al., Defendant. [827 NYS2d 309]—

Kane, J. Appeal from an order of the Supreme Court (Stein, J.), entered December 7, 2005 in Rensselaer County, which, inter alia, granted plaintiff's motion for summary judgment dismissing defendant Dennis Tremont's counterclaim.

Plaintiff commenced an action for divorce against defendant Dennis Tremont (hereinafter defendant) in August 2004. In connection with a purported reconciliation, defendant asked plaintiff to cosign a business loan using jointly-owned property as collateral. Plaintiff agreed to cosign these loan documents and discontinue her matrimonial action only if defendant signed a postnuptial agreement. Defendant apparently reviewed a first draft of the agreement, which was drafted by plaintiff's attorney, with his attorney of record in the matrimonial action and determined not to sign. The parties then discussed changes to the agreement between themselves. Plaintiff alleges that defendant told her he could not afford an attorney and would deal with her directly. Plaintiff's attorney revised the agreement as defendant suggested to plaintiff and allegedly instructed plaintiff to deliver the new agreement to him. Plaintiff delivered the agreement to defendant five days before the closing on the business loan. Plaintiff's attorney did not provide this new version of the agreement to defendant's attorney. On the day of the loan closing, defendant signed the postnuptial agreement.

Plaintiff discontinued her 2004 divorce action, but commenced this similar action when, immediately after the business loan closed, defendant resumed his extramarital affair and refused to comply with provisions of the agreement. Defendant's answer included a counterclaim seeking to nullify the agreement. Thereafter, plaintiff moved for summary judgment dismissing the counterclaim and defendant cross-moved for summary judgment on his counterclaim. Supreme Court granted plaintiff's motion and dismissed the counterclaim, thus denying defendant's cross motion. Defendant appeals.

Supreme Court correctly dismissed defendant's claim that the agreement was invalid due to overreaching by plaintiff. Courts should only grant summary judgment determining the validity of an agreement related to marital responsibilities where the spouse opposing the agreement's validity fails to raise any triable issue of fact (*see Lounsbury v Lounsbury*, 300 AD2d 812, 813-814 [2002]). Even accepting defendant's allegations as true, he did not establish sufficient overreaching by plaintiff's attorney in the procurement and execution of the agreement (*contra Spungin v Spungin*, 124 AD2d 690 [1986]). Plaintiff's attorney potentially violated an ethical rule if she directed her client to bring a copy of the agreement to defendant and have

him sign it, without first confirming that defendant was no longer represented by his attorney of record in the matrimonial action or providing reasonable advance notice to the attorney of such client-to-client communications (*see* Code of Professional Responsibility DR 7-104 [22 NYCRR 1200.35]; *Moustakas v Bouloukos*, 112 AD2d 981, 983 [1985]; *compare Imor v Imor*, 119 AD2d 913, 915 [1986], *appeal dismissed* 68 NY2d 753 [1986] [Levine, J., dissenting]). Yet defendant reviewed the original version of the agreement with his attorney, he negotiated directly with plaintiff after telling her that he could no longer afford counsel, all of the changes he recommended were incorporated into the new agreement and apparently all of the changes were in his favor.

Although he avers that he attempted, but was unable, to discuss the revised agreement with counsel before the closing and was under pressure to close on the loan without delay, those situations were of his own making, not due to overreaching by plaintiff or her attorney. Defendant and his attorney did not initially respond to the first version of the agreement or suggest changes until the parties met on their own. Defendant made a conscious choice not to seek the assistance of counsel regarding the negotiation of the agreement directly with plaintiff (*see Croote-Fluno v Fluno*, 289 AD2d 669, 671 [2001]). The agreement he signed stated that his attorney had explained to him the law governing matrimonial agreements and the effects thereof. Defendant did not detail any efforts he made to contact counsel during the five days he had the agreement before the closing, and he could have postponed the loan closing despite the potential attendant financial difficulties for his business if he truly desired to obtain legal advice before signing the agreement. Thus, while plaintiff's attorney should have provided a copy of the revised agreement to defendant's attorney of record or verified the discontinuance of representation, the circumstances here do not constitute overreaching such as would invalidate the agreement.

The agreement is also not unconscionable. Although courts carefully scrutinize marital agreements based on the fiduciary relationship of the parties, an agreement is not unconscionable merely because some terms may seem improvident; it must shock the conscience to be set aside (*see Christian v Christian*, 42 NY2d 63, 71-72 [1977]; *Croote-Fluno v Fluno, supra* at 670). Defendant's main arguments are that the agreement failed to comply with the Child Support Standards Act (Domestic Relations Law § 240 [1-b] [hereinafter CSSA]) and required him to pay more than his annual taxable income in child support, main-

tenance and expenses toward the marital residence. We disagree. The agreement complies with the opt-out provisions of the CSSA. Defendant contends that a copy of the CSSA was not attached to the agreement that he signed, but the agreement states that a copy is attached and that the parties have reviewed the provisions of that statute with counsel. The agreement lists the presumptive amount of child support under the CSSA and the figures used to calculate that amount, acknowledges that the parties are deviating from that amount and explains the reasons for that deviation (*compare Warnecke v Warnecke*, 12 AD3d 502, 504 [2004]). Defendant's income is stated as reported on his prior tax returns, but defendant is self-employed and has control over his salary. The agreement also notes that income could be imputed to him based on benefits that he receives from his hardware business and income from his separate rental business. Tax returns showing no profit from the rental business do not negate this finding as there is no supporting documentation, and items such as depreciation, which may be subtracted for tax purposes, may not be used to reduce income for CSSA purposes. While defendant contends that the presumptive amount is too high because it fails to take into account child support that he pays for a child from another relationship, accepting a lower presumptive figure would be of no significance because the parties deviated upward from the higher presumptive figure as insufficient to meet their child's needs and current standard of living. It is also noteworthy that defendant signed the agreement to induce plaintiff to close on the business loan using marital assets as collateral, and he is now unable to make plaintiff whole in that regard. As the postnuptial agreement complied with the CSSA and defendant's income was acknowledged to be higher than his reported taxable income, the agreement is not unconscionable.

Mercure, J.P., Crew III, Carpinello and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.