■ Hyman Greenspan, Plaintiff, and H.P. Greenspan Family Limited Partnership, a Nevada Limited Partnership, Respondent, v Stephen E. Miron, Appellant. [13 NYS3d 659]—

Lahtinen, J. Appeal from an order of the Supreme Court (Cahill, J.), entered August 22, 2013 in Ulster County, which, among other things, granted plaintiffs' motion for summary judgment.

In the 1940s, plaintiff Hyman Greenspan and defendant's father formed Miron Building Products Co., Inc. (hereinafter MBP), a closely held corporation that purportedly was operated by friends often on a handshake and one's word. By the 1990s, MBP experienced financial difficulties that resulted in it filing for reorganization in bankruptcy in August 2000. Prior thereto and as relevant herein, in 1996 MBP had refinanced multiple debts through a single lender, Congress Financial Corporation, which secured a lien on all of MBP's assets and, as additional security, defendant personally pledged $3,686,000 cash collateral to Congress. Apparently shortly after the time that MBP filed for bankruptcy, Greenspan was found—as an owner shareholder—personally responsible for and paid $1,728,000 of taxes owed by MBP to New York. Greenspan submitted a claim for such amount against the bankruptcy estate and, thereafter, assigned such claim (for estate planning reasons) to plaintiff H.P. Greenspan Family Limited Partnership (hereinafter the Greenspan Partnership). This debt became a class 9 claim in MBP's reorganization plan.

Defendant was president of MBP and reportedly responsible for MBP's bankruptcy reorganization plans, but asserts that he acted in close coordination with Greenspan in such regard. Congress had the sole class 1 claim under the reorganization plan, and the plan was contingent on MBP obtaining financing to pay its entire debt to Congress. Defendant states that in 2003, he authorized Congress to keep his $3,686,000 personal cash collateral as part of paying the debt to Congress and that, if he had not done so, the reorganization plan would not have succeeded. In June 2009, real estate sales by MBP generated $3,130,000, which resulted in sufficient funds to cover the class 9 claims. However, according to defendant, he spoke with Greenspan (and others who had a financial interest in MBP) and, because defendant had personally paid $3,686,000 of the Congress debt, Greenspan consented to a discount to $1,001,600 of the $1,728,000 due to him for personally paying the tax obligation. Greenspan was paid $1,001,600 in payments made in July and August 2009.

Nearly three years later, in June 2012, Greenspan commenced this action (Greenspan Partnership was later added by amended complaint) seeking the difference between his class 9 claim ($1,728,000) and the amount actually received

($1,001,600).* Defendant asserted numerous affirmative defenses including waiver and estoppel, and also counterclaimed for a setoff against the amount claimed based on his personal payment to Congress. Prior to any disclosure, plaintiffs moved for summary judgment. Supreme Court granted the motion finding, as relevant on appeal, that the waiver and estoppel assertions were unsubstantiated and that the counterclaim was barred by the statute of limitations since it was based on a 2003 payment. Defendant appeals.

We are unpersuaded by defendant's argument that his counterclaim is preserved by CPLR 203 (d). Under that statute, "claims and defenses that arise out of the same transaction [or series of transactions] as a claim asserted in the complaint are not barred by the [s]tatute of [l]imitations, even though an independent action by defendant might have been time-barred at the time the action was commenced" (*Bloomfield v Bloomfield*, 97 NY2d 188, 193 [2001]). A counterclaim preserved by the statute acts "as a shield for recoupment purposes, and does not permit the defendant to obtain affirmative relief" (*Carlson v Zimmerman*, 63 AD3d 772, 774 [2009] [internal quotation marks and citation omitted]). Application of the statute "require[s] a tight nexus between claim and counterclaim" (*Estate of Mantle v Rothgeb*, 537 F Supp 2d 533, 544 [SD NY 2008] [internal quotation marks and citation omitted]; *see Matter of SCM Corp. [Fisher Park Lane Co.]*, 40 NY2d 788, 791-792 [1976]; *Murray v Farrell*, 97 AD3d 953, 956 [2012]; *Messinger v Mount Sinai Med. Ctr.*, 279 AD2d 344, 345 [2001]; *Haller v 360 Riverside Owners Corp.*, 273 AD2d 52, 52-53 [2000]). The debt to Congress and the tax liability debt were two separate transactions that were incurred several years apart and were not intertwined or related. The fact that both debts became relevant in the bankruptcy proceeding is not enough to bring the separate obligations within the scope of CPLR 203 (d) for litigation outside the bankruptcy. Even within the bankruptcy, the tax debt paid by Greenspan was established as an individual claim by Greenspan, whereas defendant's payment to Congress did not result in an established individual claim by defendant. The transactions are too attenuated to invoke CPLR 203 (d).

Defendant did, however, assert sufficient factual issues as to waiver and estoppel (*see Won's Cards v Samsondale/Haverstraw Equities*, 165 AD2d 157, 163-164 [1991]; *cf. Inter-*

---

* Greenspan has since died and, although not in the record, the caption reportedly was amended while the appeal was pending, and the parties do not contest that Greenspan Partnership is the real party in interest.

*Power of N.Y. v Niagara Mohawk Power Corp.*, 213 AD2d 110, 114 [1995]). Defendant submitted, among other proof, an affidavit setting forth the long history of a close professional and personal relationship between the parties and the informality with which they interacted with regard to the business. Greenspan was aware of defendant's personal payment to Congress in 2003, he would have been jointly responsible for the Congress debt and his proportionate share was one third of the debt. When funds were received in 2009 to cover class 9 claims, defendant discussed the matter with Greenspan. According to defendant, Greenspan freely agreed to a discounted payment and consented to accept $1,001,600 as full compensation on his claim. Defendant then used the additional funds to pay a series of other debts owed by MBP. Defendant asserts that Greenspan did not object or indicate for years that he was entitled to an additional amount. "Viewing the evidence in a light most favorable to [defendant, the nonmovant,] and giving [him] the benefit of all reasonable inferences that can be drawn therefrom" (*Turkow v Security Mut. Ins. Co.*, 92 AD3d 1180, 1182 [2012] [citation omitted]), defendant submitted sufficient proof to avoid summary disposition at this point in the litigation. The evidentiary issues that may arise as a result of Greenspan's recent death (*see* CPLR 4519) do not, on this record, require a different result in the summary judgment motion.

Peters, P.J., Garry and Devine, JJ., concur. Ordered that the order is reversed, on the law, with costs, and motion denied.