Carter v Fairchild-Carter (2018 NY Slip Op 02230)





Carter v Fairchild-Carter


2018 NY Slip Op 02230


Decided on March 29, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 29, 2018

525139

[*1]JAMES D. CARTER, Appellant,
v
TINA L. FAIRCHILD-CARTER, Respondent.

Calendar Date: January 17, 2018

Before: Egan Jr., J.P., Devine, Mulvey, Aarons and Rumsey, JJ.


Briggs Norfolk LLP, Lake Placid (Matthew D. Norfolk of counsel), for appellant.
MaryAnne Bukolt-Ryder, Plattsburgh, for respondent.


Aarons, J.

MEMORANDUM AND ORDER
Appeal from an order of the Supreme Court (Ryan, J.), entered August 15, 2016 in Clinton County, which, among other things, denied plaintiff's motion for summary judgment.
Plaintiff (hereinafter the husband) and defendant (hereinafter the wife) were married in 2008. Their relationship, however, faltered and, in 2014, the husband commenced this action for a judgment of separation under Domestic Relations Law § 200. The wife answered and asserted a counterclaim for a judgment of divorce. The wife also sought maintenance and equitable distribution of the marital assets. The husband thereafter moved for summary judgment requesting that Supreme Court grant the wife's counterclaim for a judgment of divorce and to enforce the parties' prenuptial agreement. The wife, among other things,
opposed the husband's motion on the basis that the prenuptial agreement was not valid. Supreme Court, among other things, denied the husband's motion for summary judgment. The husband now appeals. We affirm.
"It is well settled that duly executed prenuptial agreements are generally valid and enforceable given the 'strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements'" (Van Kipnis v Van Kipnis, 11 NY3d 573, 577 [2008], quoting Bloomfield v Bloomfield, 97 NY2d 188, 193 [2001]). The party seeking to vitiate the prenuptial agreement "bears the burden of proving the impediment attributable to the proponent seeking enforcement" (Matter of Greiff, 92 NY2d 341, 344 [1998]). Such agreements will be enforced absent proof of fraud, duress, overreaching or unconscionability (see Christian v Christian, 42 NY2d 63, 72-73 [1977]; Herr v Herr, 97 AD3d 961, 962 [2012], lv dismissed 20 NY3d 904 [2012]; Matter of Garbade, 221 AD2d 844, 845 [1995], lv denied 88 NY2d 803 [1996]).
We conclude that the husband satisfied his summary judgment burden (see McKenna v McKenna, 121 AD3d 864, 866 [2014]). The husband admitted the allegations in the wife's counterclaim for a judgment of divorce. He also submitted the prenuptial agreement executed by both parties, which provided that they waived their right to equitable distribution and maintenance. It further recited that each party consulted with his or her legal counsel and had been advised by such counsel of their respective rights and obligations. The husband likewise averred in an affidavit that the prenuptial agreement was negotiated at arm's length and the parties were represented by counsel throughout the negotiations.
In view of the foregoing, the burden shifted to the wife as the party challenging the validity of the prenuptial agreement (see Tremont v Tremont, 35 AD3d 1046, 1047 [2006]). Viewing the evidence in a light most favorable to the wife, we find that the wife carried her burden of raising a material issue of fact. In opposition to the husband's motion, the wife submitted an affidavit in which she provided a contrasting version of events surrounding the execution of the prenuptial agreement. She stated therein that shortly before the wedding day, the husband presented her with a prenuptial agreement. The wife, on the advice of her counsel, told the husband that she could not sign it or marry him unless he made some changes — namely, that she would get half the value of the land and house where they resided and 50% of everything they acquired during the marriage. The wife further averred that, on "the very day before the wedding" and as she was making final preparations for the wedding, the husband presented her with a revised prenuptial agreement, told her that he had made the requested changes and assured her that she would be taken care of for the rest of her life.[FN1]
Moreover, the wife stated that she was given this new prenuptial agreement while standing outside the County Clerk's office and that the husband "didn't really give [her] time to even read the document, let alone take it back to the lawyer to look at it again." She stated that she was feeling stressed and pressured with the wedding planning and "just signed the document." These facts, if credited, give rise to the inference of overreaching (see Leighton v Leighton, 46 AD3d 264, 265 [2007], appeal dismissed 10 NY3d 739 [2008]; cf. Sheridan v Sheridan, 202 AD2d 749, 751 [1994]; Vandenburgh v Vandenburgh, 194 AD2d 957, 959 [1993]). Accordingly, Supreme Court properly denied the husband's summary judgment motion.[FN2]
Egan Jr., J.P., Devine and Mulvey, JJ., concur.




Rumsey, J. (concurring).


I concur in the majority's determination that defendant (hereinafter the wife) carried her burden of raising a material issue of fact by submitting facts that, if credited, give rise to an inference of overreaching by plaintiff (hereinafter the husband). However, I write to express my concern that the majority's determination that the wife met her burden based upon allegations that she was pressured into signing the prenuptial agreement on the day prior to the wedding without reading it establishes a dramatically lower standard for challenging prenuptial agreements that contravenes our long-standing precedent. I would not find overreaching in this case but for the wife's allegation that the husband's affirmative misrepresentation of the value of a parcel of his separately-owned real property, in which she was to share any appreciation in value that occurred during the marriage, deprived her of the benefit of the prenuptial agreement.
We have upheld the validity of a prenuptial agreement that was executed under circumstances strikingly similar to those that the majority holds may now be used to establish overreaching — namely, (1) the husband requested the prenuptial agreement, (2) the agreement was prepared by the husband's attorney at his direction,(3) the agreement was executed only a few hours prior to the parties' wedding, and (4) the wife did not read the agreement or seek to have it reviewed by her counsel before she signed it (Matter of Garbade, 221 AD2d 844, 845 [1995], lv denied 88 NY2d 803 [1996]). Indeed, we have found that such circumstances established "nothing more than [the wife's] own dereliction in failing to acquaint herself with the provisions of the agreement and to obtain the benefit of independent legal counsel[, and a]lthough this dereliction may have caused her to be ignorant of the precise terms of the agreement, the fact remains that, absent fraud or other misconduct, parties are bound by their signatures" (id. at 846; accord Matter of Bordell, 150 AD3d 1446, 1448 [2017]; see Darrin v Darrin, 40 AD3d 1391, 1393 [2007], lv dismissed 9 NY3d 914 [2007]). I further note that the case on which the majority primarily relies in finding that the wife's allegations regarding the circumstances surrounding execution of the agreement on the eve of the wedding establish the existence of overreaching — Leighton v Leighton (46 AD3d 264, 265 [2007], appeal dismissed 10 NY3d 739 [2008]) — is a 3-2 decision of the First Department that, in my view, contravenes our own precedent.
On the other hand, affirmative misrepresentation of a material fact may constitute overreaching. The failure to disclose the extent or value of assets does not, standing alone, establish overreaching (see Cohen v Cohen, 93 AD3d 506, 506-507 [2012]; Strong v Dubin, 48 AD3d 232, 233 [2008]; Panossian v Panossian, 172 AD2d 811, 813 [1991]). However, overreaching in execution may be established by proof of "concealment of facts, misrepresentation, cunning, cheating, sharp practice, or some other form of deception" (Gottlieb v Gottlieb, 138 AD3d 30, 37 [2016], lv dismissed 27 NY3d 1125 [2016]; see Matter of Fizzinoglia, 26 NY3d 1031, 1032 [2015]; Barnes-Levitin v Levitin, 131 AD3d 987, 988 [2015]).
The prenuptial agreement provided only two potential financial benefits to the wife upon divorce. First, she would be entitled to receive a payment of $15,000 for every full year of marriage, but only if the action for divorce was commenced by the husband. As relevant here, she would also be entitled to receive "a payment equal to one-half (50%) of any amount by which the real property located at 7662 Lakeshore Road [the expected marital residence] exceeds its mutually agreed upon current fair market value of [$800,000]" (emphasis added). The only evidence currently in the record shows that the value of the property when the prenuptial agreement was executed was $515,800, or $284,200 less than the $800,000 "current" value [*2]recited in the agreement that was prepared at the husband's direction [FN3]. Moreover, this
misrepresentation would not have been apparent on the face of the agreement had the wife read it before signing it. A significant overstatement of the value of the property when the agreement was executed would render the provision of little to no benefit to the wife. Thus, the affirmative misrepresentation of the value of the property by the husband, if ultimately established, would alone be sufficient to constitute overreaching.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: We note that, contrary to what the wife requested, the prenuptial agreement, as revised by the husband, provided that any property acquired by the husband during the marriage via his separate property would remain the husband's separate property. It also provided that the wife would be entitled to 50% of the appreciation of the marital residence so long as such residence's fair market value exceeded $800,000.

Footnote 2: While we agree with the concurrence that the wife also raised a question of fact as to the husband's overreaching based on her allegation that the husband affirmatively misrepresented the value of the marital residence, we do not believe it is the only basis from which overreaching by the husband can be inferred on this record.

Footnote 3: In support of his motion, the husband submitted an appraisal that estimated the value of the property as $590,000 on August 28, 2014, the date that this action was commenced. In opposition to the motion, the wife submitted proof that the estimated fair market value of the property on the tax rolls in 2008, when the prenuptial agreement was executed, was $515,800.